In re: **PARKER NORTH AMERICAN CORPORATION, Debtor.**

**PARKER NORTH AMERICAN, a Delaware corporation, aka PNA Corporation, Appellant,**

v.

**THE RESOLUTION TRUST CORPORATION, as Receiver for Sooner Federal Savings and Loan Association, Appellee.**

Nos. SACV 91–691–GLT, SACV 91–692–GLT. Bankruptcy No. SA 89–01647JR. Adv. No. SA 89–0589.

United States District Court, C.D. California.

May 8, 1992.

Marc J. Winthrop, Todd C. Ringstad, Alan J. Friedman, Lobel, Winthrop & Broker, Irvine, CA, for Parker North American Corp.

Jeffery D. Hermann, Susan B. Hall, Brobeck, Phleger & Harrison, Los Angeles, CA, Theodore Q. Eliot, John Henry Rule, Gable & Gotwals, Tulsa, OK, for Resolution Trust Corp. as Receiver for Sooner Federal Savings & Loan Assoc.

TAYLOR, District Judge.

The Court holds that, despite the normal jurisdictional prerequisite of an administrative demand, the bankruptcy court has an independent ground for jurisdiction over a claimed preferential transfer because the RTC filed its own affirmative claim.

## I. BACKGROUND

On March 17, 1989, Parker North American ("PNA") filed its Chapter 11 petition for bankruptcy relief. One of the primary motivations for filing was the opportunity to attack preferential transfers in the amount of $4.6 million that were paid by PNA to Old Sooner Savings and Loan.[1] PNA commenced a preference action against Sooner on June 1, 1989.

In November 1989, Sooner was taken over by the FDIC, and the RTC became the receiver. Pursuant to the Financial Insti-

---

**1.** Sooner had loaned PNA upwards of 10 million dollars. PNA had repaid much of these funds immediately prior to bankruptcy. Under § 547(b) such payments may constitute preferential transfers which the bankruptcy court can avoid.

tution Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. sec. 1821 *et seq.* ("FIRREA"), the RTC was substituted in place of Sooner in this preference action. Soon after becoming a party to the bankruptcy, the RTC instigated an action in the bankruptcy court against PNA for $14 million.

FIRREA requires that any entity with a claim against a failed Savings and Loan, and hence against the RTC, follow proper administrative procedures. As part of this process, the RTC allegedly sent PNA a notice setting out the administrative process for filing a claim against Sooner, including the last date by which to file an administrative claim. This notice was sent to PNA's former address. PNA never received this notice and never complied with proper administrative procedures.

In June 1991, PNA and the RTC prepared to litigate whether a preferential transfer had occurred under 547(b) of the bankruptcy code. However, the Bankruptcy court raised *sua sponte* the issue of subject matter jurisdiction. The judge ruled that FIRREA requires a party to exhaust its administrative remedies prior to bringing a preference action against the RTC. Because PNA had failed to comply with the administrative procedures contained in FIRREA, the bankruptcy court held it no longer had subject matter jurisdiction over the proceeding. Accordingly, the judge dismissed the action. 131 B.R. 452. The judge further stated that, even if the Court had jurisdiction, PNA would not prevail on its preference action.

PNA appeals this ruling, contending the bankruptcy court did have jurisdiction.

This Court holds that FIRREA generally requires a party to exhaust its administrative remedies. However, an exception exists when a court has an independent ground for jurisdiction. Because the RTC filed a claim against PNA for $14 million, the bankruptcy court has an independent ground for jurisdiction. Therefore, the matter will be reversed, and remanded to determine if PNA can prevail on its preference action.

## II. DISCUSSION

In enacting FIRREA, Congress created a process by which claims against insolvent financial institutions could be resolved. This claims review process is found at 12 U.S.C. sec. 1821(d)(3). The Claims process requires that the RTC, within a short time after its appointment as receiver, send out notice to all potential claimants of the date by which said claimant must file a proof of claim against the failed institution.

After a proof of claim is filed, the RTC has 180 days to either allow or disallow the claim. In the event that a claim is disallowed, the adversely effected party has the right to invoke a number of administrative review procedures, or commence an action in the District Court. 12 U.S.C. sec. 1821(d)(6).

The claims process severely limits the jurisdiction of other courts to review claims other than through the appellate process established in sec. 1821(d)(6). Specifically, 1821(d)(13)(D), provides:

"(D) Limitation on Judicial Review. Except as otherwise provided in this subsection, no court shall have jurisdiction over ... (i) any claim or action for payment from, or any action seeking a determination of rights with respect to the assets of any depository institution for which the corporation has been appointed receiver ..."

Judge Ryan relied upon this section to dismiss the preference action. According to Judge Ryan, PNA was compelled to file an administrative claim prior to obtaining judicial action. PNA contests this determination.

1. PROCEDURAL BARRIERS TO ADJUDICATION.

Before addressing the jurisdiction issue, the RTC puts forth two different arguments why this Court need not address the merits of PNA's case.

A. *Whether PNA waived the right to contest the bankruptcy court's determination by not making these arguments before the bankruptcy court.*

The RTC argues that PNA cannot raise arguments for the first time on ap-

peal. The RTC contends that the arguments raised by PNA on this appeal were not presented to the bankruptcy court.

PNA concedes that it did not make these arguments before the bankruptcy court. Nonetheless, PNA correctly asserts that it can now make these arguments because the bankruptcy judge made a *sua sponte* ruling.

B. *Whether the bankruptcy judge's ruling that it lacked subject matter jurisdiction prevented it from ruling on the merits of the case.*

■ The RTC argues that the bankruptcy judge made two rulings. First, the court ruled that it did not have subject matter jurisdiction. Second, it ruled that PNA would still lose even if the Court had jurisdiction and reached the merits. The RTC asserts that PNA's failure to appeal this second ruling bars its ability to contest the judge's ruling.

The RTC is incorrect. The judge's statement must be construed as dicta. Upon making the first ruling, the bankruptcy court was without power to rule on the substantive issues involved in the case. From the moment the court ruled that it did not have subject matter jurisdiction, it lost the power to issue substantive rulings. *See MacKay v. Pfeil,* 827 F.2d 540 (9th Cir.1987) (district court's granting of summary judgment when the court no longer had subject matter jurisdiction must be vacated).

2. WHETHER THE BANKRUPTCY COURT HAD JURISDICTION.

Having addressed the RTC's procedural barriers to adjudication on the merits, this Court now examines PNA's arguments that the bankruptcy court had jurisdiction.

A. *Whether FIRREA allows an action that predates the RTC's appointment to continue.*

The claims process severely limits the jurisdiction of other courts to review claims other than through the appellate process established in sec. 1821(d)(6). Specifically, 1821(d)(13)(D), provides that no court shall have jurisdiction over a claim against the RTC until that claimant exhausts its administrative remedies.

However, 12 U.S.C. sec. 1821(d)(5)(F)(ii) provides that "... the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." PNA refers to this provision to argue that the limitation on judicial review does not apply to this preference action. PNA brought the action prior to the RTC's appointment as receiver. According to PNA, this fact allows the preference suit to continue.

■ PNA relies upon *Marc Development v. Federal Deposit Insurance Corporation,* 771 F.Supp. 1163 (D.Utah 1991). In this case the plaintiff had brought an action against a failed Savings and Loan prior to the RTC's involvement in the case. The Court allowed the action to proceed. The Court held that, when an action is commenced prior to RTC involvement, the claim should be allowed to continue. PNA urges the same result as the *Marc* Court reached.

PNA is correct that FIRREA creates an exception to exhaustion for cases filed prior to the RTC's involvement. However, the law is clear that this exception only governs when the claimant *files* in compliance with FIRREA procedures. In this case PNA never filed a claim. Therefore PNA does not qualify for the exception.

This result is supported by the language of FIRREA. 12 U.S.C. sec. 1821(d)(5)(F)(ii) provides that "... the *filing of a claim with the receiver* shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." (emphasis added). As the language makes clear, a party can only continue an action previously instituted *if* the party files a claim with the receiver. In this case PNA admittedly did not file a claim with the receiver. Accordingly, 1821(d)(5)(F)(ii) does not apply.

Moreover, *Resolution Trust Corporation v. Mustang Partners,* 946 F.2d 103 (10th Cir.1991), supports this conclusion. In that case the claimant argued that the exception contained in 1821(d)(5)(F)(ii) ap-

plies whenever the claimant has a suit already pending. *Mustang Partners* rejected this result. The Court held that 1821(d)(5)(F)(ii) only serves as an exception to 1821(d)(13)(D) (the section limiting judicial review) when the claimant actually files a claim with a receiver. Because the claimant in *Mustang Partners* failed to file, the Court dismissed the claim. This Court reaches the same result.[2] PNA's failure to file a claim prevents the use of 1821(d)(5)(F)(ii).

### B. Whether PNA's Failure to file should be excused as futile.

■ In response to the RTC's position that PNA failed to file, PNA argues that this Court should excuse PNA's actions because filing would have been futile, contending it is inconceivable that the RTC would have taken any action other than denying such a claim.

This court cannot assume such futility. PNA offers no factual basis to support its contention. PNA is only speculating that the RTC would have denied the claim. Although such a result may have occurred, this court cannot make such an inference.

Moreover, PNA's argument clashes with the intent of FIRREA. According to the legislative history, "Exhaustion is a proper prerequisite to further action by a claimant." House Report Conf.Rep. No. H–5172, 215, 101st Cong., 2d Sess. (1989). The position that exhaustion is mandated has been supported by every court that has analyzed this issue. *See e.g., Coston v. Gold Coast Graphics, Inc.,* 782 F.Supp. 1532 (S.D.Fla.1991) (noting that exhaustion necessary so as not to burden district courts with these issues); *New Maine National Bank v. Reef,* 765 F.Supp. 763, 767 (D.Mo.1991). Accordingly, PNA's argument that filing was futile must be rejected.

### C. Whether an independent basis for jurisdiction in the bankruptcy court exists.

■ PNA contends the Ninth Circuit has recently held that exhaustion requirements

are inapplicable to the extent that an independent grounds for bankruptcy jurisdiction exists. *In re Town and Country Home Nursing Services, Inc.,* 963 F.2d 1146 (1992). In that case this Circuit addressed whether the bankruptcy court had jurisdiction over a debtor's claim against the Department of Health and Human Services ("HH & S"). HH & S argued that the bankruptcy court did not have jurisdiction because the debtor failed to exhaust a mandatory administrative remedy process contained in the Medicare Act, having a claims procedure similar to FIRREA. The debtor argued that the Court should excuse demand because an independent basis for jurisdiction existed where HH & S had filed claims against the debtor.

The *Town and Country* Court agreed with the debtor, holding that, where an independent basis for jurisdiction exists, exhaustion of remedies is not required.

PNA correctly argues that this case is analogous to *In re Town.* The RTC has asserted claims against PNA totalling $14 million. By asserting these claims under sec. 106(a) of the bankruptcy code, the RTC has availed itself of the privileges of bankruptcy court. To prevent PNA from having its day in court to attempt to void the preference would vitiate the purpose of Section 106(a), which is to preclude a governmental entity from obtaining distribution from an estate without subjecting itself to claims by the debtor arising out of the same transaction or occurrence. *In re Town & Country,* 112 B.R. 329 (9th Cir. B.A.P.1990). Accordingly, the RTC, by filing a claim against PNA, has created an independent basis for jurisdiction. This independent basis prevents PNA from having to exhaust administrative remedies.

The RTC argues that PNA is confusing the parties to the litigation. RTC, as receiver for the old Sooner, is distinct from RTC, receiver for the new Sooner. The Old Sooner was sued by PNA for the alleged preferential transfer. The new Sooner is

---

**2.** *Marc,* the case cited by PNA, is inapplicable. First, in that case there was still ample time for claimant to file with the receiver. Moreover, to the extent that the circuit opinion in *Mustang Partners* conflicts with the district court's view in *Marc, Mustang Partners* controls.

the party bringing the suit for $14 million against PNA. The RTC argues that these two entities are not the same, and accordingly RTC, as receiver for the Old Sooner, cannot be hauled into bankruptcy court because RTC, as receiver for the New Sooner, brought a claim in bankruptcy court.

The RTC is incorrect. The RTC relies upon cases which stand for the proposition that claims against a failed institution do not accrue against the new entity. *See e.g., Payne v. Security Savings and Loan Ass'n,* 924 F.2d 109 (7th Cir.1991); *B.L. Nelson and Associates v. Sunbelt Savings,* 733 F.Supp. 1106 (N.D.Tex.1990). This case is different. The RTC is affirmatively asserting claims against PNA which arise out of the same transaction which gives rise to the preference action. At least for jurisdiction purposes, the two claims appear inextricably related. The preference action is properly seen as a defense to the RTC's action. If PNA prevails on its preference action, then it may limit the RTC's possible recovery on its own cause of action.[3]

■ In the cases cited by the RTC, the government was not seeking an affirmative recovery. Rather the RTC was purely in a defensive posture. Given this situation, it is not surprising that the courts denied the claimant. However, the court in *Trigo v. FDIC,* 847 F.2d 1499 (11th Cir.1988) (case cited by RTC stating that claimant must pursue remedy against the "old" entity), specifically noted that, in the event that the FDIC was seeking an affirmative recovery from the claimant, the claimant would be able to assert any and all claims against the new entity. This dicta from *Trigo* appears to state the proper rule. When the RTC is purely in a defensive posture, the claimant may not be able to pursue remedies against the "new" entity. However, when the RTC affirmatively seeks a recov-

ery which arises out of the same facts as the preference action, and its opponent's claim amounts to no more than an offset against the RTC's eventual recovery, the claimant can state a claim against the "new" entity.[4]

## III.  DISPOSITION

For the reasons stated above, this Court concludes that the bankruptcy court *does* have jurisdiction over the PNA preference claim if asserted as an objection (i.e., an offset) to reduce the RTC's claim. Accordingly, the matter is REVERSED and REMANDED to the bankruptcy court for consideration on the merits.

---

**3.**  This is true because PNA concedes that it will not obtain any affirmative recovery from the RTC. PNA's hope is that, if it prevails on its preference action, the RTC's anticipated $14 million recovery will be reduced.

**4.**  PNA argues that it also can get relief under § 106(c) of the bankruptcy code. For our purposes this section concerns governmental im-

munity when the claimant seeks a non-monetary remedy against the government. *United States v. Nordic Village,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). PNA's reliance on 106(c) is misplaced. PNA hopes to have its liability to the RTC lessened. Such a request involves a monetary remedy. Therefore 106(c) is inapplicable to our facts.