**In re W.J.P. PROPERTIES, a California general partnership, Debtor.**

**W.J.P. PROPERTIES, a California general partnership, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, Receiver for Huntington Federal Savings & Loan Association; James Minnis; Chicago Title Company, a corporation, Defendants.**

Bankruptcy No. SA 88–04382 JR.
Adv. No. SA 92–1592 JR.

United States Bankruptcy Court,
C.D. California.

Dec. 18, 1992.

Dennis Winters, Law Offices of Dennis Winters, Santa Ana, CA, for debtor.

Rodney L. Solenberger, Schall, Boudreau & Gore, San Diego, CA, for Resolution Trust Corp.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Defendant Resolution Trust Corporation ("RTC"), receiver for Huntington Savings & Loan Association ("Huntington"), brings this motion to dismiss for lack of subject matter jurisdiction.

On June 17, 1986, Huntington agreed to loan W.J.P. Properties ("Debtor") $2,735,-000 for the construction of a residential care facility (the "Property"). The loan was secured by a loan payable on July 1, 1987 (the "Note"), and secured by a deed of trust on real property owned by Debtor. The maturity date was later extended by agreement to January 1, 1988. Due to non-payment, the Note went into default, and on January 27, 1988, Huntington recorded a notice of default. On May 27, 1988, Debtor filed a lawsuit in the Orange County Superior Court seeking to enjoin the trustee's sale, alleging that Huntington failed to convert the loan into a permanent loan. Debtor's application for a preliminary injunction was denied on August 11, 1988.

On August 12, 1988, Debtor filed a petition under Chapter 11 of the Bankruptcy Code. Huntington filed a proof of claim in the case to reflect the amounts due under the Note. During the course of the bankruptcy, Huntington and Debtor entered into a forbearance agreement (the "Agreement") that provided Debtor with a period of time to market and sell the Property. The Agreement permitted Huntington, upon the occurrence of an event of termi-

nation of default, to non-judicially foreclose on the Property or accept a substitute deed without seeking relief from the automatic stay. In addition, the Agreement provided that Huntington would advance Debtor $200,000 for renovation expenses to bring the Property up to standard.

On March 29, 1990, a Second Amended Reorganization Plan, which incorporated the Agreement, was approved by this court.

On February 8, 1990, the Office of Thrift Supervision appointed RTC as receiver and conservator of Huntington. On January 10, 1992, RTC provided written notice to Debtor that multiple events of termination under the Agreement had occurred, and that RTC intended to proceed with non-judicial foreclosure. RTC recorded a notice of sale against the Property, and a trustee's sale was set for May 7, 1992.

On May 6, 1992, Paul Hsu, a general partner of Debtor, filed an involuntary Chapter 11 petition against Debtor. As a result, RTC continued the trustee's sale. On May 28, 1992, RTC filed a motion to dismiss the involuntary Chapter 11 petition. On July 13, 1992, I granted RTC's motion to dismiss.

On July 21, 1992, Debtor filed this complaint.[1] Prior to filing the complaint, Debtor failed to file an administrative claim with RTC pursuant to 12 U.S.C. § 1821(d). RTC seeks to dismiss this adversary proceeding, claiming that this court has no jurisdiction over this proceeding. I took the matter under submission.

## DISCUSSION

RTC seeks to dismiss this action for lack of subject matter jurisdiction. It claims that the provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), a comprehensive statutory and regulatory framework for the regulation of the nation's savings and loan industry, provides an administrative review process for all claims against RTC (the "Procedures"). RTC argues that since

Debtor has not complied with the Procedures, it is precluded from asserting its claim in the bankruptcy court.

Debtor argues that the bankruptcy court has a separate and independent basis for subject matter jurisdiction under 11 U.S.C. §§ 1334(b) and 106(a), and that these provisions allow it to bypass the Procedures.

■ I must first address whether the FIRREA statutory limits on judicial review preclude bankruptcy court jurisdiction. Congress enacted FIRREA with the goal of providing a detailed regulatory framework to restore the financial integrity of the thrift industry's deposit insurance fund and to deal expeditiously with failed depository institutions. P.L. 101–73, 103 Stat. 183 § 101(8). FIRREA established administrative procedures for adjudicating claims asserted against RTC as receiver of a failed thrift institution. *Circle Indus. v. City Fed. Sav. Bank*, 749 F.Supp. 447, 451 (E.D.N.Y.1990), *aff'd* 931 F.2d 7 (2d Cir. 1991).

Pursuant to the Procedures, the RTC must promptly notify all creditors of the depository institution that they must present their claims, together with proof, to the receiver within 90 days of the date of the publication of the notice upon their appointment as receiver. 12 U.S.C. § 1821(d)(3)(B)(i). After a claim is submitted, the RTC has 180 days to determine whether to allow the claim, unless both RTC and the claimant agree in writing to extend that date. *Id.* § 1821(d)(5)(A)(i) and (ii). Except as provided in 12 U.S.C. § 1821(d)(5)(C)(ii), claims filed after the date set in the notice shall be disallowed, and such disallowance shall be final. *Id.* § 1821(d)(5)(C)(i). At the end of the 180 day period, or upon disallowance of a claim, the claimant may either request judicial review of the claim, file suit on the claim, continue an action which was filed before the receiver was appointed, or seek administrative review of the claim. *Id.* § 1821(d)(6)(A).

---

**1.** The complaint alleges breach of contract, rescission, breach of implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, injunctive and declaratory relief, and seeks to determine the priority of liens and set aside liens.

The claims process severely limits the jurisdiction of other courts to review claims other than through the appellate process established in the Procedures. Specifically, § 1821(d)(13)(D), provides:

> (D) Limitation on Judicial Review. Except as otherwise provided in this subsection, no court shall have jurisdiction over ... (i) any claim or action for payment from, or any action seeking a determination of rights with respect to the assets of any depository institution for which the corporation has been appointed receiver....

The Procedures allow a claimant, after an initial agency determination, the choice of pursuing judicial adjudication, or with the consent of the agency, administrative review. H.R.Conf.Rep. No. H–5172, H–5279, 101st Cong., 2d Sess. (1989).

In enacting FIRREA in 1989, Congress did not carve out a special exception for the bankruptcy court to hear FIRREA cases. I believe that if Congress had intended such a special exception, Congress would have included it within the text of FIRREA.

The Supreme Court has on many occasions stressed that in interpreting statutes, the court should first look to the statute. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). If the statute is clear and unambiguous, the court should enforce the statute as written without reference to legislative history. *United States v. Ron Pair Ent.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Cami-*

*netti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The Procedures are clear and unambiguous. Congress knew when it passed FIRREA in 1989 that the Bankruptcy Code, enacted in 1978, provided certain special rights for debtors-in-possession and trustees that might result in claims being asserted against the RTC. With this in mind, Congress did not create any exception to the bright-line application of the Procedures.

I believe a judicially created exception to FIRREA is improper especially where Congress has made its intent quite clear through the landscape of the statute and the legislative history.[2] "Exhaustion [of administrative remedies] is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1979).

In *In re Parker North American*, 131 B.R. 452 (Bankr.C.D.Cal.1991), I considered a similar jurisdictional dilemma. The debtor tried to recover preferential transfers from a banking institution taken over by the RTC. The RTC responded by filing a counterclaim against the debtor. The RTC argued that the preference action should be dismissed for lack of jurisdiction since the debtor had not exhausted its administrative remedies under FIRREA.[3]

---

**2.** In *Circle Indus. v. City Fed. Sav. Bank*, 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd* 931 F.2d 7 (2d Cir.1991), the plaintiff asserted claims against the RTC for breach of contract, breach of fiduciary duty, and fraudulent misrepresentation. The RTC moved for dismissal, asserting lack of jurisdiction, because the plaintiff had not complied with the claims procedure of FIRREA. The *Circle* court agreed and dismissed the action for lack of subject matter jurisdiction. *Id.* at 455. The court stated, "[a]s is clearly indicated in the legislative history of FIRREA, Congress intended that a district court not have subject matter jurisdiction of state law claims asserted against the RTC ... until those claims are first presented to and adjudicated by the RTC or the FDIC." *Id.* at 554.

**3.** In *In re Parker North American*, 131 B.R. 452, 455 (Bankr.C.D.Cal.1991) I stated,

The law is clear that Congress set up the claims procedures in FIRREA ... to be the exclusive means for the assertion of a claim against a failed banking institution. *United States v. Altman*, 762 F.Supp. 139, 142–43 (S.D.Miss.1991) ...

Not only does FIRREA establish the procedures ... for the determination of claims by RTC, it also expressly limits a claimant's ability to present claims in any manner other than that specifically provided for under the Act. While section 1821(d)(6) clearly envisions the presentation of claims for RTC determination prior to the institution of a suit in federal court, other provisions of FIRREA leave no doubt that com-

However, my view of FIRREA as expressed in *Parker North American* did not prevail, and I was reversed by Judge Taylor in *In re Parker North American,* 148 B.R. 925 (D.Ct.C.D.Cal.1992).[4] Judge Taylor held that § 106 grants the bankruptcy court a separate and independent basis for jurisdiction, despite the Procedures. Relying on the Ninth Circuit decision in *In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146 (9th Cir.1991), which issued during the appeal, Judge Taylor found that the RTC had waived its sovereign immunity and submitted itself to the jurisdiction of the bankruptcy court by filing a counterclaim in an adversary proceeding initiated by the debtor against the RTC.

In *Town & Country,* the Ninth Circuit considered whether the bankruptcy court had jurisdiction over a debtor's claim against the Department of Health and Human Services ("H & HS"). H & HS contended that the bankruptcy court lacked jurisdiction since the debtor failed to exhaust the mandatory administrative remedy process contained in the Medicare Act. The Ninth Circuit agreed with the debtor that under § 106,[5] an independent basis for jurisdiction existed since H & HS informally filed a claim against the debtor by asserting certain offset rights. The court held that in bankruptcy where there is an independent basis for bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other jurisdictional statutes is not required. *Id.* at 1533.

■ Debtor argues that 28 U.S.C. § 1334(b) serves as an independent jurisdictional basis. I disagree. Section 1334(b) provides:

> Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

Section 1334(b) is the general provision vesting jurisdiction under title 11 in the district courts.[6] It is not the separate and independent basis of jurisdiction the Ninth Circuit intended in *Town & Country.* "Section 1334(b) finds its analogue in 28 U.S.C. § 1331 which confers original jurisdiction upon the district courts 'of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Collier* § 3.01, 3–28.

In *Board of Governors of the Federal Reserve System of the United States v. Mcorp Financial, Inc.,* 502 U.S. —, —,

pliance with the statutorily proscribed procedures is a mandatory prerequisite to maintenance of a federal suit....

The legislative history leaves no doubt, as well. As the court stated in *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 737 F.Supp. 18, 19 (D.N.J.1990):

> The House Report discusses claims determination by receivers for failed institutions. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., reprinted in 1989 U.S.Code Cong. & Ad.News 86, 214. The House clearly states that only "[a]fter exhaustion of streamlined administrative procedures, a claimant has a choice to ... bring the claim de novo in the District Court." *Id.* "Resort to: either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC." *Id.* at 214. "[E]xhaustion is a proper prerequisite to further action by a claimant...." *Id.* at 215.

**4.** This decision is currently on appeal to the Ninth Circuit Court of Appeals.

**5.** Section § 106 provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such provision binds governmental units.

**6.** Section 157(a) authorizes the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district. General Order No. 266, dated October 9, 1984, refers all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California.

112 S.Ct. 459, 464, 116 L.Ed.2d 358, 368 (1991), the Supreme Court considered the jurisdictional balance between a similar congressionally enacted administrative process, the Financial Institutions Supervisory Act of 1966 ("FISA"), and the title 11 powers of the district court. After the debtor filed bankruptcy, it filed an adversary proceeding in the bankruptcy court to enjoin, pursuant to the automatic stay provision of 11 U.S.C. § 362, the prosecution of two *pending administrative proceedings under* FISA. The district court transferred the adversary proceeding to its docket, and held that it had jurisdiction to enjoin the Board of Governors of the Federal Reserve from prosecuting the administrative proceedings. The Supreme Court disagreed, holding that the district court lacked jurisdiction to enjoin the regulatory proceeding. *Id.* The Supreme Court stated that § 1334(b) "authorizes a district court to exercise concurrent jurisdiction over certain bankruptcy proceedings that would otherwise be subject to the exclusive jurisdiction of another court.... Section 1334(b) concerns the allocation of jurisdiction between bankruptcy courts and other '*courts,*' and, of course, an administrative agency such as the Board is not a 'court.'" *Id.* Also, the Court stated that the specific preclusive language of FISA is not qualified or superseded by the general provisions governing bankruptcy proceedings. *Id.*

Section 1334(b) is the general statutory jurisdictional provision conferring general jurisdiction on the district courts to hear bankruptcy matters. If I accepted Debtor's argument that § 1334(b) serves as a separate and independent basis for jurisdiction, then exhaustion of administrative remedies under FIRREA and comparable statutes would have little meaning in bankruptcy. I do not believe the Ninth Circuit in *Town & Country* intended its decision to be read so broadly without a more detailed

and thoughtful analysis of the potential effect of its holding.

■ Alternatively, Debtor argues that § 106(a) clearly gives me jurisdiction over this proceeding. Debtor asserts that RTC's actions constitute an informal proof of claim as described in *Town & Country.*

In *Town & Country,* the government had offset post-petition payments otherwise due and payable to the debtor against alleged pre-petition overpayments made to debtor. The court held that the government's conduct was the functional equivalent of filing a claim under § 106. *Town & Country,* 963 F.2d at 1153.

In *In re Anderson–Walker Industries, Inc.,* 798 F.2d 1285, 1287–88 (9th Cir.1986), the Ninth Circuit held that correspondence by a creditor with a bankruptcy trustee which shows an intent to assert a claim against the bankruptcy estate may constitute an informal proof of claim, even though no document is filed with the bankruptcy court. The *Anderson–Walker* court held that governmental actions in a bankruptcy that are consistent with an intent to assert a claim in the bankruptcy case are to be treated as an informal proof of claim for purposes of § 106(a).

In *Parker North American,* the RTC filed a counter-claim against the debtor for $14 million. Judge Taylor held that the RTC's actions in filing its counterclaim against the debtor amounted to an informal proof of claim which created an independent basis for jurisdiction under § 106(a). 148 B.R. at 929. In that case, Judge Taylor stated that the RTC should be viewed as a separate and distinct entity from the institution it has succeeded if the RTC's actions in a bankruptcy are made in a "defensive posture."[7] The court held that the RTC's counterclaim was an action by the government seeking an "affirmative recovery," and not made in a "defensive posture." Accordingly, Judge Taylor held that the bankruptcy court had subject matter jurisdiction over the *Parker* case.

---

7. *Id.* 148 B.R. at 930. This holding was based on Judge Taylor's interpretation of *Payne v. Security Savings and Loan Ass'n,* 924 F.2d 109 (7th Cir.1991) and *B.L. Nelson and Associates v.*

*Sunbelt Savings,* 733 F.Supp. 1106 (N.D.Tex. 1990), two cases standing for the the proposition that claims against a failed institution do not accrue against the new entity.

In this case, Huntington sought to sell the Property at a trustee's sale. Following Debtor's bankruptcy petition, the two parties entered into the Agreement, and the Agreement was incorporated into Debtor's confirmed plan of reorganization. Although Huntington had filed a proof of claim prior to being taken over by RTC, RTC never took any action in the bankruptcy court. Therefore, RTC has not acted in a way that would impute Huntington's proof of claim to RTC for purposes of § 106(a).

This situation is quite different from the cases discussed above. In those cases, RTC had either filed a proof of claim, offset a claim, or filed a counterclaim against a debtor. In this case, RTC proceeded with foreclosure after confirmation and after Debtor allegedly defaulted on the Agreement. The Agreement specifically provided that Huntington was relieved from the automatic stay, and that upon termination or default by Debtor, it could proceed with non-judicial foreclosure or accept a substitute deed. RTC did not file a proof of claim in this bankruptcy case, nor did it take any action in the bankruptcy case that might arguably constitute the filing of an informal claim under § 106(a).

To summarize, § 1334(b) is not an independent basis for jurisdiction in the bankruptcy court over a claim against RTC without complying with the Procedures. Although § 106(a) may constitute a separate and independent basis for jurisdiction, § 106(a) is inapplicable here. Therefore, RTC's motion to dismiss is granted.

In light of my ruling, I need not reach RTC's argument that it is not a "governmental unit" under § 106(c).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

ORDER DISMISSING ADVERSARY PROCEEDING FOR LACK OF SUBJECT MATTER JURISDICTION

In accordance with the findings of fact and conclusions of law set forth in my memorandum opinion of this date, it is

ORDERED that Resolution Trust Corporation's motion to dismiss is granted.

IT IS FURTHER ORDERED that debtor's motion for temporary restraining order and preliminary injunction is denied.