### In re WISSEL & SONS CONSTRUCTION CO., INC., Debtor.

### WISSEL & SONS CONSTRUCTION CO., INC., Plaintiff,

### v.

### The HOWARD SAVINGS BANK, Defendant.

### In re Conrad WISSEL, III and Beatrice Wissel, Debtors.

### Conrad WISSEL, III and Beatrice Wissel, Plaintiffs,

### v.

### The HOWARD SAVINGS BANK, Defendant.

Bankruptcy Nos. 89–05107, 89–07708.
Adv. Nos. 89–2050, 89–2049.

United States Bankruptcy Court, D. New Jersey.

Sept. 16, 1993.

---

McElroy, Deutsch & Mulvaney, by Vincent E. Reilly, Morristown, NJ, for debtors.

Connell, Foley & Geiser, by Kevin R. Gardner, Roseland, NJ for the F.D.I.C. as Receiver for the Howard Sav. Bank.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Before this Court is a Motion of the Federal Deposit Insurance Corporation in its capacity as Receiver for the Howard Savings Bank (the "FDIC") to Dismiss the Complaints of Wissel & Sons Construction Company, Inc. (the "Debtor") and the Debtors, Conrad Wissel, III and Beatrice Wissel (the "Wissels") for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b) as incorporated in Bankruptcy Rule 7012(b); a Motion by the Debtor and the Wissels for Partial Summary Judgment; and the FDIC's Crossmotion for Summary Judgment.

The following constitutes the Court's findings of fact and conclusions of law.

## FACTS

On June 29, 1989, the Debtor Wissel and Sons Construction Company, Inc. filed for protection under chapter 11 of the United States Bankruptcy Code. On September 27, 1989, the Debtors also filed for protection under chapter 11 on the United States Bankruptcy Code. After three years in Chapter 11, the Debtor and the Wissels were unable to reorganize and on August 12, 1992, the cases were converted to Chapter 7. Mr. Carmen Maggio was appointed Trustee in each case.

On December 6, 1989, the Debtor and the Wissels filed separate complaints respectively against defendant, the Howard Savings Bank (the "Bank"). On or about October 23, 1992, the FDIC became involved in the instant case, after the Bank was declared insolvent. The Debtor and the Wissels are suing the Howard Savings Bank for, *inter alia,* breach of contract, tortious interference with contract and fraud stemming from a June

1987 loan commitment issued in favor of the Debtor Wissel & Sons Construction Company, Inc. for acquisition and construction for Wissel & Sons Construction Company, Inc.'s development of a subdivision in Oceanport, New Jersey. The debtors by the complaint also seek consequential damages and to void the mortgage of the Howard. The Wissels are shareholders of the Debtor, but otherwise have no legal or contractual interest in the pending litigation, except that Conrad Wissel, III guaranteed the debt of the Debtor, Wissel & Sons Construction Company.

The June 1987 loan commitment (the "Commitment") provided for land acquisition and construction financing for the Debtor's development of a subdivision in Oceanport, New Jersey. The Bank delayed funding the loans at an August 1987 closing (the "1987 Closing") because the Debtor failed to demonstrate that the riparian rights of New Jersey did not invade the subject realty. The day after the aborted 1987 Closing, the Debtor produced a delineation map of riparian rights which satisfied the Bank. The Debtor, however, could not persuade the seller to close. As a result, the Debtor sued for specific performance on the land sale contract.[1]

The Debtor's specific performance lawsuit was not resolved until almost one year after the 1987 Closing, by which time the Commitment had allegedly expired. The Bank, nevertheless, agreed to fund a new loan in the amount of $760,000.00 to allow the Debtor to acquire the subject property in accordance with its specific performance judgment. This loan (the "New Loan") was closed on August 9, 1988 (the "1988 Closing").

Prior to the 1988 Closing, the Bank, by its loan officer and attorney, allegedly informed the Debtor, both orally and in writing, that the Commitment had expired and that the New Loan was for acquisition only; and thus, did not carry any ancillary obligation on the part of the Bank to provide the Debtor with construction financing. *See* Brief in support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed February

5, 1993, Exhibit A (hereinafter "FDIC Brief").

At the 1988 Closing, the Debtor accepted the proceeds of the New Loan, took title to the subject realty and secured the New Loan by giving the Bank a mortgage against that property. Additionally, the Debtor and guarantors executed a release in favor of the Bank regarding any liability that could arise from the Commitment and the unsuccessful 1987 Closing. *See* FDIC Brief, Exhibit B.

The Debtor defaulted on its monetary obligations to the Bank under the New Loan, failing to make the first and all subsequent payments due and owing to the Bank. The Bank initiated a foreclosure action in the Superior Court of New Jersey, Chancery Division, Monmouth County, by filing a complaint in or about June 1989. The Debtor and Conrad Wissel, III were named defendants. The Bank obtained a judgment in foreclosure on June 21, 1989.

On October 2, 1992, the Commissioner of Banking of the State New Jersey declared the Howard Savings Bank insolvent. Pursuant to *N.J.S.A.* 17:9A–272(D), the Commissioner offered to appoint the FDIC as Receiver to the Bank. Pursuant to § 212 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Public Law 101–93, 101 Stat. 183, 12 U.S.C. § 1821(c)(3) ("FIRREA") the FDIC accepted the appointment. As a result of its appointment, the FDIC, in its capacity as Receiver of the Bank, by operation of law, succeeded to all of the rights of the Bank pursuant to 12 U.S.C. § 1821(d)(2).

On or about October 8, 1992, the FDIC, as Receiver of the Bank, published a notice in the Newark Star Ledger and the New York Times advising creditors and potential claimants of the appointment of the Receiver and of their right and obligation to file appropriate proofs of claim with the FDIC. *See* Certification of Robert Fraser, filed February 5, 1993 (hereinafter "Fraser Cert."). The notice informed creditors and potential claimants that they were required to submit their proofs of claim by January 25, 1993.

---

1. The Debtor was a party to the Commitment and to the land sale contract. Beatrice and Conrad Wissel were not parties to either contract. Conrad Wissel, III, however, guaranteed the loan.

*Id.* The FDIC as Receiver of the Bank republished the notice on November 9, 1992 and on December 11, 1992. *Id.* In addition, the Debtor and the Wissels received actual notice of the appointment of the FDIC as Receiver in the Bank on or about October 13, 1992 when the FDIC filed and served a motion for a 90-day stay of these adversary proceedings pursuant to 12 U.S.C. § 1821(d)(12).[2] That motion was granted by this Court. The Debtor and the Wissels never filed a proof of claim with the FDIC as Receiver of the Bank. The FDIC, however, has conceded that it failed to notify the Debtor or the Wissels directly of the administrative procedure. *See* Letter from Raymond T. Lyons, Jr., Esq. attorney for the FDIC, filed April 30, 1993. Mr. Lyons states in the April 27, 1993 letter to this Court:

> On April 7th, you heard the cross motions by the FDIC seeking dismissal of the adversary complaints and by the debtors seeking partial summary judgment. Your Honor reserved decision on these matters. One of the factual assertions by the debtors is that they never received a notice from the FDIC of the procedure for filing claims with the FDIC as Receiver for The Howard Savings Bank. Following the argument of the motion, we reviewed this matter with the FDIC and determined that the FDIC has no record of having mailed a notice to the corporate debtor, the individual debtors or their counsel. The FDIC, in this particular case, has decided to send a notice to the corporate debtor and the individual debtors through their counsel, and to extend the time period for filing claims for these particular debtors. We understand that the normal time period for filing claims expired on January 25, 1993. We further understand that the notice to be sent by the FDIC to the debtors will reopen the period for filing claims for 30 days from the date of the notice.

Vincent E. Reilly, Esq., counsel for Wissel & Sons Construction Company, Inc. and the Wissels asserts that he had numerous contacts with Mr. David White, Esq., of Bourne, Noll & Kenyon, as counsel for the FDIC, in an attempt to resolve the claims administratively. *See* Certification of Vincent E. Reilly, filed February 22, 1993 (hereinafter "Reilly Cert."). The Debtor and the Wissels further argue that their actions for breach of contract, tortious interference with contract and fraud against the Bank, were filed before the FDIC's appointment as receiver. Also, subsequent to such involvement, upon being contacted by the Wissels' counsel regarding their claim, the Debtor and the Wissels assert that on October 15, 1992, Vincent Reilly, Esq., as counsel for the Wissels, in a telephone call with David White, Esq. requested a meeting with the FDIC to resolve the claims administratively without a hearing. The Debtor and the Wissels further assert that, on October 19, 1992, David G. White, Esq., the FDIC's counsel, dictated a letter to the FDIC's case manager expressing the debtors' interest in a meeting to resolve the matter. *Id.* The Wissels' counsel further contends that another meeting with the FDIC's counsel David White, Esq. and Paul Martinez, Esq. occurred on October 23, 1992, during which the FDIC's counsel told the Wissels' counsel that as of that day a claim procedure was being developed and that no claims procedure notices had been sent out yet. *Id.*

According to Vincent Reilly, Esq., on November 24, 1992, Mr. White told the Wissels' counsel that it had taken the request for a meeting to resolve the claim without litigation under consideration and that Mr. White stated further that he would send the FDIC a reminder that they owed the Wissels an answer regarding their request to meet. *Id.* At this meeting, according to Mr. Reilly, Mr. White, upon being told by Wissels' counsel that they had yet to receive notice of a claim

---

2.  Section 1821(d)(12)(A) provides:
    After appointment of a conservator or receiver for an insured depositary institution, the conservator or receiver may request a stay for a period not to exceed—
    (i) 45 days, in the case of any conservator; and
    (ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party.
    12 U.S.C. § 1821(d)(12)(A) (1989).

procedure, responded that he was unaware of any being sent.

On January 13, 1993, a status conference was held before this Court on the adversary proceedings at which time Vincent Reilly appeared. However, no counsel for FDIC or Howard attended the status conference. At that time, the 90 day temporary stay of the proceeding which had been granted to the FDIC by this Court pursuant to 12 U.S.C. § 1821(d)(12) had expired on or about January 4, 1993.

Counsel for the debtors asserts that on January 26, 1993, one day after the alleged period for filing a notice of claim with the FDIC expired, FDIC's counsel represented to this Court that it would be filing the present motion to dismiss the debtors' claims for failure to exhaust administrative remedies.

On April 7, 1993, this court heard arguments regarding the instant motion to dismiss, as well as a pending motion by the Debtor and the Wissels for partial summary judgment and the FDIC's crossmotion for summary judgment. At that time, this court reserved decision on those matters.

As set forth above through a letter dated on April 27, 1993 (the "April 27, 1993 Letter") from Raymond T. Lyons, Jr., Esq., attorney for the FDIC, the FDIC informed this court that it had no record of sending the Debtor or the Wissels notice of the procedure for filing claims under FIRREA. Therefore, the FDIC decided to send a notice to the Debtor and the Wissels and to extend the time for filing claims in the instant case. Although the original period for filing claims expired on January 25, 1993, the FDIC agreed to extend the period for 30 days from the date of the notice. *See* Letter from Raymond T. Lyons, attorney for the FDIC, filed April 27, 1993.

By letter dated May 6, 1993 from Vincent E. Reilly, Esq., attorney for the Wissels and the Debtor, the Wissels and the Debtor responded to the April 27, 1993 Letter, by arguing that the FDIC's decision to provide notice as required under 12 U.S.C. § 1821(d)(3)(C) represented a waiver of the FDIC's argument that the Debtor and the

Wissels failed to pursue and exhaust the administrative claims procedure. Therefore, the Debtor and the Wissels conclude that this court should deny the FDIC's motion to dismiss the adversary complaints.

## DISCUSSION

■ Under the Financial Institutions Reforms Recovery and Enforcement Act of 1989 ("FIRREA"), Congress created a comprehensive system for handling claims against failed financial institutions. The mandatory administrative claims procedure of FIRREA, as set forth in 12 U.S.C. §§ 1821(d)(3) through 1821(d)(13), is exclusive. Congress has removed subject matter jurisdiction from any court to handle claims against a failed institution which claimants have not followed the statutory claims procedure.

Section 1821(d)(13)(D) of FIRREA provides:

(D) Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

Every court addressing this issue has held that the administrative claims procedure is exclusive, that a claimant seeking payment from the assets of a failed institution must follow the procedure, and that no court has jurisdiction over a claim against a failed institution except as provided under FIRREA. *See Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 484 (8th Cir.1993); *Henderson v. Bank of New England*, 986 F.2d 319, 320–21 (9th Cir.1993); *Office and Professional Employees Int'l Union Local 2 v. Federal Deposit Ins. Corp.*, 962 F.2d 63, 66 (D.C.Cir. 1992); *Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 882 (5th Cir.1992); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 (3d

Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *Praxis Properties, Inc. v. Colonial Sav. Bank,* 947 F.2d 49, 63 (3d Cir.1991); *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 627 (2d Cir. 1991); *Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103, 106 (10th Cir.1991); *Feise v. Resolution Trust Corp.,* 815 F.Supp. 344, 346 (E.D.Cal.1993); *Espinosa v. DeVasto,* 818 F.Supp. 438, 440–41 (D.Mass.1993); *Estate of Harding by Williams v. Bell,* 817 F.Supp. 1186, 1194 (D.N.J.1993); *Rash v. Publicker Indus., Inc.,* 1992 WL 21298, * 1, 1992 U.S.Dist. LEXIS 1500, *4 (E.D.Pa. 1992); *Circle Indus., Div. of Nastasi–White, Inc. v. City Fed. Sav. Bank,* 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (2d Cir. 1991); *Tuxedo Beach Club Corp. v. City Federal Sav. Bank,* 737 F.Supp. 18, 19 (D.N.J. 1990); *Amsave Credit Corp. v. Resolution Trust Corp.,* 141 B.R. 578, 587 (Bankr.D.N.J. 1992) ("FIRREA prohibits any court from asserting subject matter jurisdiction over any assets, disputed or not, in which the RTC, as conservator or receiver of a failed depository institution claims an ownership interest unless and until the claims procedure has been exhausted"); *In re Parker North American,* 131 B.R. 452, 458 (Bankr.C.D.Cal.1991) *rev'd on other grounds, remanded, Parker North American v. Resolution Trust Corp.,* 148 B.R. 925, 928 (C.D.Cal.1992); *Resolution Trust Corp. v. Shoreview Builders, Inc.,* 252 N.J.Super. 408, 415, 599 A.2d 1291 (App.Div. 1991). In a recent circuit court opinion on this issue, the Court of Appeals for the Eighth Circuit held that:

> We agree with the conclusion reached by the other circuits. The language of the statute makes it clear that administrative exhaustion is required before any court acquires subject matter jurisdiction over a claim brought against the RTC as receiver for a failed banking institution.

*Bueford,* 991 F.2d at 484.

The *Bueford* court rejected the argument made by the appellant plaintiff that if administrative exhaustion was required under FIRREA, the plaintiff was exempt from these procedures because her case was pending at the time the Receiver was appointed.

Plaintiff there contended that application of FIRREA's administrative requirements to a pending case would constitute an improper retroactive application of the statute. In rejecting that argument, the *Bueford* court stated:

> Section 1821(d)(6)(B) provides that a claim which has not been presented to the RTC by the end of the statutory period shall be deemed disallowed, and no further appeal will be possible. This bar specifically includes: "an action commenced before the appointment of the receiver." 12 U.S.C. § 1821(d)(6)(B)(ii). We find this language to clearly indicate that FIRREA is to be applied to pending actions. *See Marquis v. FDIC,* 965 F.2d 1148 (1st Cir.1992) (FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver); *RTC v. Mustang Partners,* 946 F.2d 103, 106 (10th Cir.1991) (per curiam) (FIRREA's administrative claims procedures must be complied with, even in cases where suit was filed prior to the appointment of the receiver); *see also FDIC v. Kasal,* 913 F.2d 487 (8th Cir.1990) (applying FIRREA's section 1819 amendments to case pending on appeal when the amendments became law), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991). We conclude, therefore, that the plain language of the statute mandates its application to Bueford's employment discrimination action.

*Id.* at 485.[3] (footnote omitted)

The Court of Appeals for the Third Circuit has held that § 1821(d)(13)(D)(i) "reaches (1) claims for payment from the assets of [the failed bank], (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets." *Rosa,* 938 F.2d at 393; *see also In re Purcell,* 150 B.R. 111, 113–14 (D.Vt.1993) (finding that

---

**3.** The plaintiffs argue that *Bueford* does not apply to the instant case because the facts differ. The section quoted above, however, stands for a general interpretation of FIRREA and is not fact specific. Therefore, with respect to this section, the Court rejects the plaintiffs' argument.

bankruptcy court has jurisdiction because debtor sought a recordable declaration that the failed institution's lien was facially invalid; thus, the Debtor was not a creditor of the failed institution because the Debtor did not hold a "claim" against the failed institution; since the purported lien was not perfected, it was not a *bona fide* asset of the bank). In the instant case, the Debtor and the Wissels filed Complaints to determine their respective rights and claims against the assets of the Bank. Thus, § 1821(d)(13)(D)(i) applies to these adversary complaints.

The Court of Appeals for the Third Circuit has also held:

> FIRREA's claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821.

*Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3d Cir.1991) (citations omitted).

In *Praxis,* the court exercised subject matter jurisdiction when the creditor of the failed bank notified the FDIC of its claim but, because of actions of the FDIC, failed to satisfy the technical requirements of § 1821(d). *Praxis,* 947 F.2d at 64.

In that case, the claimant and the RTC had engaged in protracted negotiations, but the claimant failed to follow the required technical procedures. The *Praxis* court noted that because of FIRREA's "infancy," the procedures relied on by the FDIC for allowing or disallowing claims had not been finalized. As a result, the *Praxis* court held that:

> under the circumstances [the claimant] did all it could do to exhaust its administrative remedies before filing suit. RTC's final rejection of [the] claim after protracted negotiations accordingly constituted a disallowal under section 1821(d)(5)(A), which permitted this lawsuit to proceed.

*Id.*

The *Praxis* court reasoned that Congress intended § 1821 to provide an efficient means to dispose of claims against failed institutions. Therefore, the *Praxis* court cited with approval the reasoning in *Decrosta v.*

*Red Carpet Inns Int'l, Inc.,* 767 F.Supp. 694, 696 (E.D.Pa.1991) that FIRREA requires exhaustion of its administrative remedies "at least to the extent of initial presentation of claims to RTC, prior to the assertion of a claim against RTC in court." *Praxis,* 947 F.2d at 64. The *Praxis* court also relied on FIRREA's legislative history which provided that: "[r]esort to ... the District Courts ... is available only after the claimant has first presented its claim to [RTC]." *H.R.Rep.* No. 101–54(I) at 418, 1989 U.S.C.C.A.N. at 214. *Id.* at 64.

The *Praxis* court concluded:

> Because RTC did disallow [the claimant's] claim after months of negotiations, and because this case arose in the nascent stages of FIRREA, at which time RTC lacked a fully developed, standardized claims process, we conclude that 12 USCA § 1821(d)(13)(D) was not a bar to federal jurisdiction over this case. We do not mean to imply, however, that under today's regime, a mere breakdown of negotiations between RTC and a claimant would entitle the claimant to proceed in court.

*Id.* at 64.

The *Praxis* court expressly found that the claimant had exhausted all of its administrative remedies. *Id.* at 64. Moreover, the *Praxis* court carefully limited its holding to cases, arising in the "nascent stages" of FIRREA, in which the RTC rejected the claimant's claim after the claimant substantively, although not technically, satisfied the required administrative procedures.

In sum, courts consistently exercise subject matter jurisdiction over cases arising under FIRREA only when the claimant shows that it has exhausted its administrative remedies.

Several courts, however, have limited the exclusivity of such claims under FIRREA to pre-receivership claims. *See Estate of Harding,* 817 F.Supp. at 1194–96; *Marquis v. Federal Deposit Ins. Corp.,* 965 F.2d 1148, 1154 (1st Cir.1992); *Resolution Trust Corp. v. Cotten,* 790 F.Supp. 649, 650 (E.D.La. 1992); *c.f. Praxis,* 947 F.2d at 63 n. 14. *But see New Maine Nat'l Bank v. Reef,* 765 F.Supp. 763, 766 (D.Me.1991). *See also Res-*

*olution Trust Corp. v. Mustang Partners,* 946 F.2d 103 (10th Cir.1991) (requiring compliance with the administrative claims process in order to preserve a claimant's right to continue pursuing a pending lawsuit involving the same claim). These courts rely on two principles: (1) a federal court reviews subject matter jurisdiction as of the filing date and (2) FIRREA § 1821(d)(5)(F)(ii) provides:

> (ii) No prejudice to other actions. Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

*Estate of Harding,* 817 F.Supp. at 1195 (citing *Rosa,* 938 F.2d at 392 n. 12); *see also Marquis,* 965 F.2d at .1152–54. In *Praxis,* the Court of Appeals for the Third Circuit addressed this issue in dicta:

> The situation is slightly different, however, where a claimant files its action against a depository institution *before* the institution becomes insolvent and is placed in receivership. In that case, the failure of the thrift and the appointment of RTC as receiver would appear not to divest the federal court of jurisdiction, for "[i]t is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint," *Rosa,* 938 F.2d at 392 n. 12.

*Praxis,* 947 F.2d at 63 n. 14 (emphasis in original).

In *Marquis,* the Court of Appeals for the First Circuit held that:

> .... four powerful indicators of FIRREA's meaning—the structure of the Act, its language, the underlying legislative in-

tent, and common sense—unanimously counsel in favor of a construction of FIRREA that permits federal courts to retain jurisdiction in circumstances where a bank's failure (and the FDIC's appointment as receiver) postdates the institution of a suit against the bank.

*Marquis,* 965 F.2d at 1154. The *Marquis* court noted the following provisions of FIRREA's administrative claims review process:

> These subsections grant to the FDIC, acting in its capacity as receiver, the authority to determine claims against the failed institution. The same subsections set out basic guidelines governing the ACRP. [administrative claims review process] Among the more important provisions under the FDIC's interpretation are subsections (d)(5)(A)(i) (requiring that an administrative determination be made within 180 days next following the filing of a claim), 12 U.S.C. § 1821(d)(5)(A)(i); subsection (d)(5)(A)(ii) (allowing an extension of the claims processing period upon written agreement of the claimant and the FDIC), 12 U.S.C. § 1821(d)(5)(A)(ii); and subsection (d)(6)(A) (authorizing further administrative review or de novo judicial review of disallowed claims, as the claimant prefers), 12 U.S.C. § 1821(d)(6)(A).

*Marquis,* 965 F.2d at 1152 n. 4.

The *Marquis* court focused on FIRREA § 1821(d)(13)(D)'s language which it determined contained a specific exemption allowing retention of cases if and to the extent that jurisdiction is "otherwise provided in this subsection." [4]

Given this interpretation, the *Marquis* court held that FIRREA creates a "scheme

---

**4.** The *Marquis* court also found that §§ 1821(d)(5)(F)(ii):

> No prejudice to other actions. Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.; (d)(8)(E)(ii):

> No prejudice to other actions. Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.; and (d)(12):

> Suspension of legal actions. (A) In general. After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed—
> (i) 45 days, in the case of any conservator; and
> (ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party.

"coalesce to show Congress' discernible intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver." *Id.* at 1153.

under which courts will retain jurisdiction over pending lawsuits—suspending, rather than dismissing, the suits—subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." *Id.* at 1154. The Court of Appeals for the Tenth Circuit, however, has rejected this reasoning. *Marc Development, Inc. v. Federal Deposit Ins. Corp.,* 992 F.2d 1503, 1507 (10th Cir.1993) In addressing the *Marquis* court's holding, the *Marc Development* court held that:

> We further hold that our opinion in *Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103 (10th Cir.1991), is consistent with the district court's opinion in *Marc Development,* 771 F.Supp. 1163, which we adopt today. Contrary to the FDIC's assertions, *Mustang Partners* does not require *exhaustion* of the administrative claims process before the lawsuit can continue, but merely requires *compliance* with the administrative claims process in order to preserve a claimant's right to continue pursuing a pending lawsuit involving the same claim. *Mustang Partners,* 946 F.2d at 106. Therefore, *Marc Development,* which allows the claims process to proceed simultaneously with the litigation subject only to a 90 day stay provided in 12 U.S.C. § 1821(d)(12)(A)(ii), is consistent with *Mustang Partners* in that it allows the litigation to continue without inhibiting concurrent compliance with the FDIC's administrative claims process.... we disagree with the First Circuit's assertion that the district court, in its discretion, can and ordinarily should stay proceedings for more that the 90 days specified in 12 U.S.C. § 1821(d)(12)(A)(ii) to allow for the exhaustion of the administrative claims review process. *Marquis,* 965 F.2d at 1155. We feel that granting the district court such discretion ignores the plain language of § 1821(d)(12)(A)(ii) and is "inconsistent with the spirit and effect of the [90 day] stay."

*Marc Development,* 992 F.2d at 1507 (citing *Marc Development, Inc. v. Federal Deposit Ins. Corp.,* 771 F.Supp. 1163, 1167 (D.Utah 1991)). *See also F.D.I.C. v. Grillo,* 788 F.Supp. 641, 647 (D.N.H.1992) (court interpreted § 1821(d)(5)(F)(ii) to grant a claimant with a pre-receivership lawsuit a "duality of remedies" to pursue the court action simultaneously with the administrative claims resolution process or pursue only the administrative claims process or only the court process).

In *Estate of Harding,* the District Court for the District of New Jersey addressed the issue of whether to dismiss or stay a proceeding filed by a claimant before the failed institution went into receivership. *Estate of Harding,* 817 F.Supp. at 1188. After a careful analysis of *Praxis* and *Marquis,* the *Estate of Harding* court stayed the litigation "pending the shorter of either the completion of the administrative claims process or 180 days as measured from the FDIC's issuance of notice" pursuant to FIRREA § 1821(d)(3)–(8) and. (13). *Id.* at 1194–96 (citing *Praxis,* 947 F.2d at 64 n. 14).

The Debtors argue that the RTC is estopped from asserting lack of subject matter jurisdiction due to its failure to comply with the notice provisions of FIRREA. This Court rejects this argument and notes the reasoning of the court in *Marketplace/Ken Caryl Partners v. Victorio Inv.,* 778 F.Supp. 29 (D.Colo.1991) where the court noted in regard to the plaintiff's argument that the RTC did not comply with § 1821(d)(3)(B)(i) which requires the RTC to "promptly publish a notice to the depository institutions' creditors to present their claims ... to the receiver" and § 1821(d)(3)(C) which provides that "The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) ... upon discovery of the name and address of a claimant not appearing on the institutions' books within thirty days after the discovery of such name and address.":

> I need not decide whether estoppel can be used to avoid the administrative claims procedures mandated by section 1821(d), *compare Garrett v. United States,* 640 F.2d 24, 26 (6th cir.1981) (per curiam), because the behavior complained of does not rise to the level of affirmative misconduct necessary to establish estoppel against the government. *See Heckler v. Community Health Serv. Inc.,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984) (estoppel inappropriate because party "ex-

pected to know the law and may not rely on the conduct of Government agents contrary to law"); *INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam) (delay in processing a permanent residency petition insufficient to establish estoppel against government); *Penny v. Giuffrida,* 897 F.2d 1543, 1547–48 (10th Cir.1990) (Estoppel against government, if available at all, requires affirmative misconduct).

*Victorio,* 778 F.Supp. at 30–31.

In the instant case, the Debtor and the Wissels have failed to exhaust FIRREA's administrative remedies. Therefore, given the holding in *Estate of Harding* and the dicta in *Praxis,* this court will stay the instant adversary proceedings pending the shorter of either the completion of the administrative claims process or 180 days as measured from the FDIC's issuance of notice. Accordingly, this court denies the FDIC's Motion to Dismiss the Complaints of Wissel & Sons Construction Company, Inc. and Conrad Wissel, III and Beatrice Wissel for Lack of Subject Matter Jurisdiction and will grant a stay for the shorter of either the completion of the administrative claims process or 180 days as measured from the FDIC's issuance of notice.

However, given this court's decision to stay the adversary proceeding, this court will not address the issues raised in the motion by the Debtor and the Wissels for partial summary judgment or the FDIC's crossmotion for summary judgment.

An order shall be submitted in accordance with this opinion.