In re **PARKER NORTH AMERICAN CORPORATION, Debtor.**

**PARKER NORTH AMERICAN CORPORATION, Plaintiff–Appellee,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for Sooner Federal Savings and Loan Assoc., Defendant–Appellant.**

**PARKER NORTH AMERICAN CORPORATION, Plaintiff–Appellee,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for Sooner Federal Savings and Loan Assoc., Defendant–Appellant.**

Nos. 92–55790, 92–55804.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1993.

Decided May 19, 1994.

G. Patrick Watson, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, Ira H. Parker and P. Matthew Sutko, Resolution Trust Corp., Washington, DC, for defendant-appellant.

Marc J. Winthrop and Alan J. Friedman, Lobel, Winthrop & Broker, Irvine, CA, for plaintiff-appellee.

Before: FLETCHER, PREGERSON, and HALL, Circuit Judges.

Opinion by Judge HALL; Concurrence by Judge FLETCHER

CYNTHIA HOLCOMB HALL, Circuit Judge:

The Resolution Trust Corporation, as receiver for Sooner Federal Savings and Loan Association, appeals a district court order reversing the bankruptcy court's holding that it lacked subject-matter jurisdiction over chapter 11 debtor Parker North American Corporation's action to recover preferential transfers. We affirm and remand to the bankruptcy court for a hearing on the merits.

## I.

In 1988, Parker North American Corporation ("PNA") and Sooner Federal Savings and Loan Association ("Old Sooner") executed a sale and leaseback agreement under which Old Sooner lent $10 million to PNA. In March 1989, after repaying $4.65 million to Old Sooner, PNA filed a petition under chapter 11 of the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330. Shortly thereafter, PNA commenced in bankruptcy court an adversary proceeding against Old Sooner to recover the $4.65 million as a preferential transfer under § 547(b) of the Code. Old Sooner subsequently filed proofs of claim against PNA for the balance of the $10 million and for other sums arising from the sale and leaseback transaction. In sum, Old Sooner sought approximately $14 million from PNA's bankruptcy estate.

In November 1989, the Office of Thrift Supervision ("OTS") declared Old Sooner insolvent and, pursuant to the newly-enacted Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), appointed the Resolution Trust Corporation ("RTC") as receiver for the institution. *See* 12 U.S.C. § 1464(d)(2). The OTS subsequently transferred some of the assets and liabilities of Old Sooner to a new entity, Sooner Federal Savings Association ("New Sooner"), and appointed the RTC as conservator. *See id.* Under the OTS transfer agreement, New Sooner received all of Old Sooner's claims against PNA but none of the potential liability represented by PNA's preference action.[1] *See id.* § 1821(d)(2)(G).

The RTC subsequently sent notice to Old Sooner's creditors instructing them to file claims with the receiver prior to February 21, 1990. *See id.* § 1821(d)(3). PNA never received the notice and never filed a claim.[2] PNA did, however, continue to pursue its preference action in bankruptcy court, where the RTC actively participated in the chapter 11 case. Eventually, the RTC filed a summary judgment motion against PNA, asserting PNA's failure to file a claim as an affirmative defense to the preference action. The RTC did not dispute that Old Sooner had received a preference and, in fact, stipulated that the bankruptcy court should grant

---

1. Within ten months of the transfer, the OTS declared New Sooner insolvent and again appointed the RTC as receiver. It is in the capacity as receiver for New Sooner that the RTC now holds the claims against PNA that originated from Old Sooner's original loan transaction.

2. Although the RTC attempted to contact PNA as part of the noticing process, PNA had changed its place of business and never received the RTC's letter. In any event, because PNA considered itself a debtor to (rather than a creditor of) Old Sooner, it is unclear whether it would have filed a claim with the RTC even if it had received notice.

summary judgment for PNA in the event that none of its affirmative defenses were successful.

The bankruptcy court granted the RTC's summary judgment motion on different grounds, holding *sua sponte* that PNA's failure to exhaust FIRREA's claim procedures deprived it of subject-matter jurisdiction over the preference action. 131 B.R. 452 (Bankr. C.D.Cal.1991) (*PNA I*). The district court reversed, concluding that § 106(a) of the Code, which waives sovereign immunity for claims arising from the same transaction or occurrence as a claim filed by a governmental unit, provided the bankruptcy court with independent jurisdiction over PNA's action. 148 B.R. 925 (C.D.Cal.1992) (*PNA II*).[3] In so holding, the district court relied on *Sullivan v. Town & Country Nursing Servs. (In re Town & Country Nursing Servs.)*, 963 F.2d 1146 (9th Cir.1992), in which we determined that § 106(a) created bankruptcy court jurisdiction over claims against the Department of Health and Human Services despite the debtor's failure to exhaust administrative remedies under the Medicare Act. *Id.* at 1154–55.

The RTC filed a timely appeal, necessitating our determination of whether FIRREA precludes bankruptcy court jurisdiction over a preference action against an institution for which the RTC, in its capacity as receiver, has filed a proof of claim arising from the same transaction as the alleged preference.[4] We review *de novo* this jurisdictional question, *e.g., Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 161 (9th Cir.1986), and "note at the outset that the question we must resolve ...

is not one on which we owe deference to the [RTC]. Congress did not commit questions of court access ... to the Corporation." *Office & Professional Employees Int'l Union v. FDIC*, 962 F.2d 63, 65 (D.C.Cir.1992) (internal citation omitted).

**II.**

District courts have original jurisdiction over bankruptcy cases "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts." 28 U.S.C. § 1334(b). Actions to recover preferential transfers are core proceedings, *id.* § 157(b)(2)(F), and are therefore "squarely within [the bankruptcy court]'s subject matter jurisdiction." *FDIC v. Tamposi (In re Tamposi Family Inv. Properties)*, 159 B.R. 631, 634 (Bankr.D.N.H.1993). "[B]y filing a claim against the bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims'.... If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process.... In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (internal quotation omitted). *See Katchen v. Landy*, 382 U.S. 323, 328–40, 86 S.Ct. 467, 472–78, 15 L.Ed.2d 391 (1966) (creditors consent to the bankruptcy court's summary jurisdiction over preference actions by filing a claim against the bankruptcy estate).

---

3. The bankruptcy court also held that, even if it had jurisdiction, PNA would not prevail on the merits of its preference complaint. *PNA I*, 131 B.R. at 457–58. The district court, however, correctly held that these additional statements were *dicta* because, "[f]rom the moment the [bankruptcy] court ruled that it did not have subject matter jurisdiction, it lost the power to issue substantive rulings." *PNA II*, 148 B.R. at 928.

4. Observers have attached hyperbolic importance to this issue. The RTC warns that bankruptcy court jurisdiction "will significantly impair the RTC's ability to resolve the nation's thrift crisis." Bankruptcy judges, on the other hand,

predict that lack of jurisdiction would "threaten[ ] the efficient functioning of the federal Bankruptcy system" and cause "the whole [bankruptcy] process to grind to a catastrophic halt in a procedural gridlock, leaving debtors and other creditors mired with no possibility for relief in hundreds of cases." *All Season's Kitchen, Inc. v. FDIC (In re All Season's Kitchen, Inc.)*, 145 B.R. 391, 393, 400 (Bankr.D.Vt.1992). *See First City Asset Servicing Co. v. FDIC (In re First City Asset Servicing Co.)*, 158 B.R. 78, 82 (Bankr.N.D.Tex. 1993) ("forc[ing] bankruptcy debtors to go through the FIRREA claims process ... would threaten the operation of the bankruptcy system").

■ Through FIRREA, however, Congress granted the RTC broad power to hear and determine claims against insolvent thrifts. *See* 12 U.S.C. §§ 1821(d)(3)–(d)(14).[5] FIRREA's "receivership claims process 'allow[s] the [RTC] to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.'" *Henderson v. Bank of New England,* 986 F.2d 319, 320 (9th Cir.) (quoting H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419, *reprinted in* 1989 U.S.C.C.A.N. 86, 215), *cert. denied,* — U.S. ——, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993).

■ In fact, FIRREA "strips all courts of jurisdiction over claims made outside the administrative procedures." *Id.* Specifically, FIRREA provides that *"no court* shall have jurisdiction over ... *any claim* or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added). Claimants may seek review in district court only after the RTC has disallowed a claim or after 180 days have elapsed without a determination. *Id.* §§ 1821(d)(5)(A); 1821(d)(6).

■ Claimants must exhaust these administrative remedies before seeking district or bankruptcy court review. *RTC v. Midwest Fed. Sav. Bank,* 4 F.3d 1490, 1495 (9th Cir.1993); *Henderson,* 986 F.2d at 321. "The statute bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is susceptible of resolution through the claims procedure." *Midwest Fed. Sav. Bank,* 4 F.3d at 1495 (emphasis added) (internal quotations omitted). FIRREA "divests the district court of jurisdiction over both claims and counterclaims against the RTC until the claimants have exhausted the administrative procedures." *Id.*

The question before us, therefore, is whether PNA's preference action is "susceptible of resolution through the claims procedure." If it is, bankruptcy court jurisdiction does not exist because PNA failed to exhaust its administrative remedies under FIRREA.[6] If it is not, bankruptcy court jurisdiction exists and PNA is free to litigate the preference complaint there.

Analogous questions recently have generated significant litigation in the lower courts. After the bankruptcy court decision in this case, the first to discuss the issue, at least thirteen bankruptcy and district courts have addressed some form of the problem. *See All Season's Kitchen,* 145 B.R. at 393 n. 2 ("[T]he Bankruptcy Judge's grapevine has buzzed with news of the same theory being advanced [by the RTC] ... from the Canadian border to the Mexican border and from coast to coast.... [W]e are witnessing a regulatory campaign [by the RTC] to change the law."). Unfortunately, the dispositions rendered by the lower courts are inconsistent in analysis and result.[7] In reaching our decision, we canvass the relevant caselaw and

---

5. For our purposes, the RTC's regulatory authority over insolvent thrifts is coextensive with the FDIC's regulatory authority over failed banks. *See* 12 U.S.C. § 1441a(b)(4); *RTC v. Midwest Fed. Sav. Bank,* 4 F.3d 1490, 1495 (9th Cir.1993). The reasoning of cases that interpret the jurisdictional nature of FIRREA for the FDIC, therefore, applies with equal force to analysis of the issue for the RTC. *Midwest Fed. Sav. Bank,* 4 F.3d at 1495; *FDIC v. diStefano,* 839 F.Supp. 110, 119 n. 4 (D.R.I.1993). Where relevant, we cite both types of authority.

6. In such a case, PNA would have no ability to recover any part of the alleged $4.65 million preferential transfer. PNA would not now be able to file a claim with the RTC nor be able to seek later review in the bankruptcy court. Because the bar date for claims has passed without compliance with FIRREA's claims procedures, PNA would "have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B).

7. In large part, the RTC is at fault for these disparities: "It is a miracle that anyone, let alone a busy district judge, can cope with the profusion of arguments that the ... Resolution Trust Corporation unleash[es] in cases of this kind.... Like a giant squid releasing ink, agency counsel pour out arguments and citations, heaping defense upon defense, sometimes without heed for the merits of the contention." *Lawson v. FDIC,* 3 F.3d 11, 14 (1st Cir.1993). *See Scott v. RTC (In re Scott),* 157 B.R. 297, 318 & n. 18 (Bankr. W.D.Tex.1993) ("[T]he RTC has ... demonstrat[ed] an almost cavalier disregard for the economical use of judicial resources ... [and] has continually turned a deaf ear to the [debtor] and to this court when confronted with facts and law not to its liking."). The RTC's voluminous briefs to this court bear out these criticisms.

draw on what we perceive to be the best reasoned and most persuasive cases.

Ultimately, we conclude that the district court erred by relying on § 106(a). Nevertheless, we hold that FIRREA's claims process does not apply to PNA's preference action. We therefore affirm on grounds other than those set forth by the district court and remand to the bankruptcy court. *See Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 584 (9th Cir. 1993) ("We may affirm the district court's judgment based upon any ground supported by the record even if the district court relied on the wrong ground or employed incorrect legal reasoning.")

### A.

■ Section 106(a) of the Code provides for a waiver of sovereign immunity when the government files a claim in a bankruptcy proceeding: "A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose." 11 U.S.C. § 106(a). By enacting § 106(a), "Congress meant to ... subject[ ] the government to an automatic exposure to liability as the price of its participation in the distribution of the bankruptcy estate." *Town & Country,* 963 F.2d at 1155.

■ The district court relied on *Town & Country* to hold that, despite PNA's failure to exhaust its claims under FIRREA, § 106(a) provided an independent jurisdictional basis for the preference action:

> By asserting these claims under sec. 106(a) of the bankruptcy code, the RTC has availed itself of the privileges of the bankruptcy court. To prevent PNA from having its day in court to attempt to void the preference would vitiate the purpose of Section 106(a), which is to preclude a governmental entity from obtaining distribution from an estate without subjecting itself to claims by the debtor arising out of the same transaction or occurrence. Accordingly, the RTC, by filing a claim against PNA, has created an independent

basis for jurisdiction. This independent basis prevents PNA from having to exhaust administrative remedies.

*PNA II,* 148 B.R. at 929 (citation omitted). The RTC contends that the district court erred by extending *Town & Country* to FIRREA. We agree.

In *Town & Country,* we held that a debtor could assert tort and contract claims against the Department of Health and Human Services despite failing to pursue administrative remedies under the Medicare Act. *Town & Country,* 963 F.2d at 1154–55. *Accord University Medical Ctr. v. Sullivan (In re University Medical Ctr.),* 973 F.2d 1065, 1073–74 (3d Cir.1992). PNA argues that *Town & Country* is dispositive because the Medicare Act, like FIRREA, requires claimants to exhaust administrative remedies before seeking judicial review. The RTC correctly asserts, however, that *Town & Country* is distinguishable because we based our decision in that case on two facts inapplicable to the FIRREA claims process.

Specifically, in *Town & Country* we emphasized that Congress had enacted the Code *subsequent to* the Medicare Act without comment on debtors' continuing obligations to comply with the exhaustion requirement: "At the time of the Bankruptcy Code's passage, Congress was aware that its prior enactments ... had already prescribed certain conditions for the government's waiver of sovereign immunity. The legislative history of Section 106 indicates that Congress meant to alter this landscape." *Town & Country,* 963 F.2d at 1155. Congress enacted FIRREA, on the other hand, more than ten years *after* promulgating the Code. As the RTC notes, the logic of *Town & Country* dictates that the "broad jurisdictional brush [of § 106(a) ] is overridden by the *subsequent* specific provisions of FIRREA."

Our decision in *Town & Country* also turned on the fact that the Medicare Act's administrative exhaustion provision expressly listed several statutes that Congress intended to preempt but failed to mention 28 U.S.C. § 1334, the bankruptcy jurisdiction statute: "[The Medicare Act] only bars actions under 28 U.S.C. §§ 1331 and 1346; it in no way prohibits an assertion of jurisdiction

under section 1334." *Town & Country*, 963 F.2d at 1155. FIRREA, of course, does not list statutes, providing instead that "no court" has jurisdiction over "any" non-exhausted claim.

Accordingly, we conclude that the district court erred by applying *Town & Country* to FIRREA's claim process. In the absence of the factors relied upon by the *Town & Country* court, the specific provisions of FIRREA, the recently-enacted statute, should supersede the general waiver of sovereign immunity in the Code, the older statute. *See Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, —— U.S. ——, ——, 112 S.Ct. 459, 465, 116 L.Ed.2d 358 (1991) ("the specific preclusive language in [federal banking statutes] is not qualified or superseded by the general provisions governing bankruptcy proceedings"); *Landmark Land Co. v. RTC (In re Landmark Land Co.)*, 973 F.2d 283, 289 (4th Cir.1992) ("general statutory language of the Bankruptcy Code is superseded by the more specific anti-injunctive language" of FIRREA).

### B.

Our conclusion that the district court erred does not end our analysis. As mentioned above, several district and bankruptcy courts have, since the district court's opinion in this case, considered issues similar to the one before us. Most of these courts have concluded that, despite FIRREA, bankruptcy courts should exercise jurisdiction over preference actions when the RTC files a claim in the bankruptcy proceedings. We find these decisions persuasive and reach the same conclusion in this case.

### 1.

■■■■ First, and most important, we think that PNA's preference action is not susceptible of resolution through FIRREA claims procedures because it does not constitute a claim by a creditor against the RTC. We agree with the courts that hold that FIR-

REA applies only to claims of *creditors* against the RTC and not to "challenges incident to the [RTC]'s claims against its *debtors.*" *Continental Fin. Resources, Inc. v. FDIC (In re Continental Fin. Resources, Inc.)*, 154 B.R. 385, 389 (D.Mass.1993) (emphasis added). *See FDIC v. Purcell (In re Purcell)*, 150 B.R. 111, 113–14 (D.Vt.1993); *Scott*, 157 B.R. at 310–13;[8] *All Season's Kitchen*, 145 B.R. at 393–96; *see also Tamposi Family Inv. Properties*, 159 B.R. at 637 (adopting this reasoning as "an alternative basis for rejecting the FDIC's 12 U.S.C. § 1821(d)(13)(D) statutory bar defense").

The district court in *Purcell* set forth a good summary of the rationale underlying these cases:

FIRREA's administrative claims procedure does not discuss, mention, or reference[ ] debtors, their responsibilities and duties, or the FDIC's treatment of debtors upon taking receivership of a failed bank. Rather, the statute discusses "promptly publish[ing] a notice to the depository institution's *creditors* to present their claims," [12 U.S.C. § 1821(d)(3)(B) ]; "mail[ing] a notice ... to any *creditor* shown on the institution's books," [*id.* § 1821(d)(3)(C) ]; and, "pay[ing] *creditor* claims which are allowed by the receiver," [*id.* § 1821(d)(10)(A) ].

Furthermore, reading 12 U.S.C. § 1821(d)(3), which discusses the FDIC's authority to determine claims, together with 12 U.S.C. § 1821(d)(13)(D), it is clear that the intent of the statute is to deal with the claims of *creditors*, not debtors. 12 U.S.C. § 1821(d)(3)(A) speaks of the FDIC's power to "determine claims," and 12 U.S.C. § 1821(d)(3)(B) and (C) indicate which "claims" Congress was referring to by providing that only creditors were to receive notice. Consequently, since the term "claims" should be interpreted consistently throughout the statute and 12 U.S.C. § 1821(d)(3) indicates that Congress meant *creditors'* claims, the refer-

---

8. Although the bankruptcy court in *Scott* subsequently withdrew its opinion at the mutual request of the RTC and the debtor (as part of a global settlement incident to the confirmation of a plan of reorganization), *see Scott v. RTC (In re*

*Scott)*, 162 B.R. 1004 (Bankr.W.D.Tex.1994) (order withdrawing opinion), we continue to cite the case because the court's reasoning remains valid and pertinent to our analysis.

ence to "claims" in 12 U.S.C. § 1821(d)(13)(D) should also be read to refer to creditors' claims.

*Purcell,* 150 B.R. at 113–14 (citations omitted).[9]

"The legislative history of FIRREA indicates that Congress was not concerned with debtors when it drafted the administrative claims procedure." *Id.* at 115. The history of § 1821(d) indicates, for example, that FIRREA "establishes a claims procedure, with specific deadlines for *creditors.*" H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 331, *reprinted in* 1989 U.S.C.C.A.N. 86, 127 (emphasis added). Congress intended FIRREA "to dispose of the bulk of *claims against* failed financial institutions." *Id.* at 419, *reprinted in* 1989 U.S.C.C.A.N. 86, 215 (emphasis added). There is "not a scintilla of a suggestion that Congress intended that debtors who owe money to [the RTC] should have to go through the FIRREA claims determination process, nor of any intent to deprive the Bankruptcy Court of jurisdiction to determine issues arising from [the RTC]'s claims against those debtors." *All Season's Kitchen,* 145 B.R. at 397.

■ Accordingly, we agree that "a 'claim' under FIRREA means an obligation owed *by* the failed institution, and not an obligation owing *to* it." *Scott,* 157 B.R. at 310–11 (internal quotation omitted).

The assertions of debtors contesting some aspect of their indebtedness *to* the failed institution are disputes arising incident to asset administration, as opposed to claims administration.... All such disputes fall completely outside the ambit of FIRREA's claims adjustment process for these are not so much claims against the assets awaiting distribution following liquidation as they are items which tend to determine ... whether the amount or val-

ue of the asset is as much as the receiver claims it to be[ ].

The clearly expressed legislative congressional purpose behind FIRREA's claims adjustment procedure is satisfied by a construction that applies that process only to the failed institution's creditors, and does not try to extend it to every conceivable dispute in which the RTC might find itself embroiled during a given receivership.

*Id.* at 311, 313 (citation and footnote omitted).

■ This conclusion makes sense. Bankruptcy courts have expertise in determining preference actions, which involve legal matters unique to the Code. The RTC, on the other hand, has no special skill in determining bankruptcy questions and, in fact, would be under no obligation to apply bankruptcy law to a debtor's preference complaint. Rather, the receiver's skill lies in ascertaining and paying claims by *creditors* against failed institutions. A preference action which arises incident to the RTC's *collection* efforts against the debtor simply does not fit within that framework.

Moreover, "[w]ith no authority to allow or disallow [the RTC]'s claims against a bankruptcy debtor, the system falls apart.... [I]n a Chapter 11 case, [the] inability to allow a claim by [the RTC] would make plan confirmation impossible. The only option in such a situation might well be to dismiss the case." *All Season's Kitchen,* 145 B.R. at 400. We doubt that Congress intended such a result.

The RTC's derisive dismissal of the above-noted authority as "aberrant New England bankruptcy cases" is unavailing. We will not ignore the persuasive reasoning of these cases merely because the RTC wishes us to do so.[10] The RTC's substantive attacks on

9. As the Tenth Circuit recently noted in an analogous context, "[w]e do not determine in a vacuum which 'claims' are jurisdictionally barred under [§ 1821(d)(13)(D)].... [Rather], we proceed on the assumption that Congress intended the 'claims' barred by § 1821(d)(13)(D) to parallel those contemplated under FIRREA's administrative claims process laid out in the greater part of § 1821(d)." *Homeland Stores, Inc. v. RTC,* 17 F.3d 1269, 1273–74 (10th Cir.1994) (concluding that FIRREA's exhaustion requirement does not

apply to claims relating to the RTC's conduct as receiver of a failed institution).

10. We note that, initially, the RTC did not seek to dismiss this case on jurisdictional grounds, and we surmise that the bankruptcy court's *sua sponte* dismissal has prompted the RTC to devise the jurisdictional arguments it now asserts so strenuously in this and other cases. We also observe that, despite its jurisdictional contentions, the RTC has continued to defend other

the cases do not fare any better. The fact that several involved preference actions attacking an RTC lien on the debtor's property is irrelevant. In *Continental Financial, Purcell, All Season's Kitchen,* and *Scott,* as in this case, the debtor sought to limit its liability *as a debtor* to an RTC-controlled institution. We see no difference in such a situation between a debtor who tries to avoid a lien and one who attempts to reduce a proof of claim.

 Although FIRREA does provide that the RTC may disallow a claim of "preference," *see* 12 U.S.C. § 1821(d)(5)(D), we think, for the reasons stated above, that the statute "should be construed to be limited to those situations in which the claimant is a creditor." *All Season's Kitchen,* 145 B.R. at 401. *See Homeland Stores, Inc. v. RTC,* 17 F.3d 1269, 1275 (10th Cir.1994) (The preference provision "put[s] the claims process in the context of a conventional winding up of the *debts* accrued *by* an institution before entering receivership.") (emphasis added). For the same reason, we disagree with the RTC's assertion that bankruptcy court jurisdiction would violate the mandates of 12 U.S.C. § 1821(i)(2), which provides that the RTC's maximum liability under FIRREA is "the amount [a] claimant would have received" if the RTC had liquidated the insolvent thrift. We think "claimants" under § 1821(i)(2) are creditors, not debtors, of the financial institution.

 Finally, we conclude that PNA's preference action is in substance an action to determine whether the RTC actually has an asset rather than "an action seeking a determination of rights with respect to[ ] the assets of [a] depository institution." 12 U.S.C.

§ 1821(d)(13)(D)(i). *See Scott,* 157 B.R. at 313 ("FIRREA's administrative claims exhaustion requirement is not yet invoked at the stage in which a court is determining whether the res in question is even an 'asset' within the meaning of the statute.... [T]he Bankruptcy Court, in the exercise of its jurisdiction to determine jurisdiction, must determine whether the RTC in fact has an asset.") (internal quotation omitted). If the preference action is meritorious, the RTC has no asset and FIRREA does not apply.

The cases cited by the RTC are similarly inapposite. In *Hoffman v. FDIC (In re NNLC Corp.),* 136 B.R. 611, 613 (Bankr. D.Conn.1992), the debtor *conceded* that the bankruptcy court should not exercise jurisdiction over its preference action against the FDIC. In two other cases, the RTC had not asserted any claim against the debtor. *Committee Disbursing Agent v. RTC (In re Valley Forge Plaza Assocs.),* 159 B.R. 161, 164 (Bankr.E.D.Pa.1993); *W.J.P. Properties v. RTC (In re W.J.P. Properties),* 149 B.R. 604, 609–10 (Bankr.C.D.Cal.1992). And, in two final decisions, the bankruptcy courts refused to exercise jurisdiction over debtors' contract actions against the FDIC and RTC only after concluding that such actions constituted claims by *creditors* against the failed institutions, precisely the type of proceedings FIRREA was intended to cover. Moreover, neither court discussed whether the FDIC or RTC had filed a proof of claim in the bankruptcy proceedings. *Wissel & Sons Constr. Co. v. The Howard Savs. Bank,* 160 B.R. 48, 54 (Bankr.D.N.J.1993); *Amsave Credit Corp. v. RTC (In re American Mortgage and Inv. Servs., Inc.),* 141 B.R. 578, 586–87 (Bankr. D.N.J.1992).[11]

actions in bankruptcy courts on the merits. *See, e.g., Ford v. Union Bank (In re San Joaquin Roast Beef),* 7 F.3d 1413, 1414 (9th Cir.1993) (adjudicating the merits of debtor's preference action against the FDIC); *Jobin v. RTC,* 160 B.R. 161, 164 (D.Colo.1993) (same); *Franklin Sav. Corp. v. Franklin Sav. Ass'n (In re Franklin Sav. Corp.),* 159 B.R. 9, 12 (Bankr.D.Kan.1993) (RTC stipulates to bankruptcy court jurisdiction over debtor's counterclaim).

While we do not bind the RTC to this conduct, we do think it contrary to the RTC's vehement assertions that FIRREA clearly and unequivocally mandates a rejection of the "New England

bankruptcy cases" and a conclusion that the bankruptcy court lacks jurisdiction. "RTC's regulatory power may be awesome, but it does not empower nor authorize the RTC to alter its status, in chameleon-like fashion, to make the most of the prevailing environment." *RTC v. Ocotillo West Joint Venture,* 840 F.Supp. 1463, 1468 (D.N.M.1993) (reciting the "RTC fight song").

**11.** The bankruptcy court in *Desmond v. Yiakas (In re Yiakas),* No. 91–12575–CJK, 1992 Bankr.Lexis 1642 (Bankr.D.Mass. July 7, 1992), did hold, in an unpublished memorandum, that FIRREA nullified subject-matter jurisdiction over the debtor's preference action against the FDIC.

**2.**

■ We find additional support for our conclusion that the bankruptcy court has jurisdiction over PNA's preference action in our recent *Midwest Federal* decision. In that case, we held that FIRREA "does not divest a district court of jurisdiction over an affirmative defense" against the RTC. *Midwest Fed. Sav. Bank,* 4 F.3d at 1497. *Accord FSLIC v. Mackie,* 962 F.2d 1144, 1150 (5th Cir.1992) (Litigant "cannot bring any counterclaims or claims for offset against [a new thrift] because [the thrift] did not assume any of the FSLIC's liabilities; it only purchased the assets. [Litigant] can, however, assert these claims as affirmative defenses to [the thrift]'s action enforcing the note."); *Trigo v. FDIC,* 847 F.2d 1499, 1503 (11th Cir.1988). This result is inherently logical: "The interpretation of Section 1821(d)(13)(D) urged by the RTC ... would lead to the patently absurd consequence of requiring presentment and proof to the RTC of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC." *Midwest Fed. Sav. Bank,* 4 F.3d at 1496–97 (internal quotations omitted).

■ Although preference actions often take the form of counterclaims, *see, e.g., NBD Park Ridge Bank v. SRJ Enters. (In re SRJ Enters.),* 151 B.R. 189, 192 (Bankr. N.D.Ill.1993), they also often take the form of affirmative defenses, *see, e.g., United States Trust Co. v. Raritan River Steel Co. (In re American Spring Bed Mfg. Co.),* 153 B.R. 365, 368 (Bankr.D.Mass.1993). In this case, we think PNA's preference action is in substance an affirmative defense. If successful in establishing preference liability, PNA will invoke § 502(d) of the Code, which requires the bankruptcy court to disallow claims asserted by a creditor who has received a preferential transfer unless the creditor disgorges the preference payments. 11 U.S.C. § 502(d). "Section 502(d) operates to disallow claims of transferees who do not surrender their avoidable transfers. It does not

compel the surrender, nor permit affirmative relief of any kind." *Committee of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies),* 143 B.R. 734, 737 (9th Cir. BAP 1992). *Cf.* 11 U.S.C. § 550(a) (permitting affirmative recovery of a preferential transfer). As such, by invoking § 502(d), PNA transformed the preference action into an affirmative defense against the RTC's proof of claim. *See PNA II,* 148 B.R. at 930 & n. 3 ("[B]ecause PNA concedes that it will not obtain any affirmative recovery from the RTC ..., [t]he preference action is properly seen as a defense to the RTC's action. If PNA prevails on its preference action, then it may limit the RTC's possible recovery on its own cause of action."). Therefore, under *Midwest Federal,* the bankruptcy court has jurisdiction to adjudicate this defense.

The RTC complains that PNA has, at various times, characterized the preference action as a claim, counterclaim, offset, and affirmative defense. We find this contention unavailing, however, because in *Midwest Federal* we expressed a willingness to disregard labels and characterize an action according to its substance: "Although ... labeled as a 'counterclaim,' we conclude a better description of the reformation claim is 'affirmative defense' ... [because the claimant] is attempting to defend itself from personal liability." *Midwest Fed. Sav. Bank,* 4 F.3d at 1495. Here, PNA also "is attempting to defend itself from personal liability" on the RTC's proof of claim. As a result, the preference action is best characterized as an affirmative defense.

**3.**

■ We therefore conclude that the FIRREA claims process does not apply to actions filed in bankruptcy court to recover preferential transfers, at least where the RTC has filed a proof of claim that exceeds the amount sought to be recovered by the debtor. In so holding, we harmonize the Code and FIRREA and permit bankruptcy courts

---

The court, however, did not mention whether the FDIC had filed a proof of claim in the proceedings and failed to analyze the issue further. Moreover, in addition to being unpublished, *Yiakas* now has no value as precedent because, in

*Continental Financial,* the *district court* in the same district held that a bankruptcy court could in fact exercise jurisdiction over a debtor's preference action against the FDIC. *Continental Fin. Resources,* 154 B.R. at 388–89.

to determine matters in which they, and not the RTC, have specific expertise.[12]

## III.

We affirm for reasons other than those relied upon by the district court in concluding that the bankruptcy court had subject-matter jurisdiction over PNA's preference action. The district court erred by applying § 106(a). Congress enacted FIRREA after promulgating the Code and therefore, under the reasoning of *Town & Country*, FIRREA's claims process supersedes the Code's waiver of sovereign immunity. The district court, however, ultimately reached the correct result. In situations such as this, FIRREA is inapplicable to claims against the RTC that arise only incidentally to the bankruptcy court's determination of the RTC's claim against the debtor. Any other result would impede "the process of allowance and disallowance of claims" and would unnecessarily disrupt the "integral ... restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Langenkamp*, 498 U.S. at 44, 111 S.Ct. at 331 (internal quotation omitted).

**AFFIRMED. REMANDED** to the Bankruptcy Court.

FLETCHER, Circuit Judge, concurring.

I concur separately because I believe this case can be resolved on grounds far narrower than those relied on by the majority. The majority states in conclusion that FIRREA's exhaustion requirement does not apply "where the RTC has filed a proof of claim that exceeds the amount sought to be recovered by the debtor," and where the claim against the RTC "arise[s] only incidentally to the bankruptcy court's determination of the RTC's claim against the debtor." Majority op. at 5311. But in these situations, any claim on the part of the debtor is in the nature of an affirmative defense, and we held in *RTC v. Midwest Fed. Sav. Bank*, 4 F.3d 1490, 1496–97 (9th Cir.1993), that affirmative defenses of this kind are not subject to FIRREA's exhaustion requirement. We need go no further to resolve this case.

Most notably, we need not decide whether *all* preference actions are exempt from the sway of FIRREA. Certain preference actions may *not* be "incidental" to the RTC's collection efforts: a debtor may seek affirmative recovery of the preference, rather than simply a setoff. *Compare* 11 U.S.C. § 550(a) (affirmative recovery of a preferential transfer) *with* 11 U.S.C. § 502(d) (setoff). In such a situation, I am not at all certain that a preference action could not be characterized, and properly so, as a "claim" under FIRREA, subject to FIRREA's exhaustion requirement. *See In re All Season's Kitchens, Inc.*, 145 B.R. 391, 401 (Bankr.D.Vt.1992) (" 'claim of preference' [as used in 12 U.S.C. § 1821(d)(5)(D) ] should be construed to be limited to those situations in which the claimant is a creditor. *An example would be a situation where the trustee seeks to recover preferential payments*") (emphasis added).

In this case, although PNA initiated the preference action, and therefore at one time may have appeared to be using that action as something more than an affirmative defense, subsequent events have made it clear that the preference action will lead at most to a setoff. Under such circumstances, I believe that *Midwest Federal Savings* controls.[1] I

---

12. Considering that it sought to take advantage of this expertise by filing a claim against PNA in bankruptcy court, the RTC's dire admonitions about FIRREA's all-encompassing scope are particularly inappropriate. When the RTC "makes a claim against others, it has in fact already engaged in the kind of administrative deliberative process that FIRREA was intended to provide for claims against it." *All Season's Kitchen*, 145 B.R. at 396. *See Scott*, 157 B.R. at 319 ("FIRREA's administrative claims process seems ... to have been satisfied" because "[t]hroughout the eighteen months that this case has been pending, the RTC has pursued the ... claim for its full amount, in spite of the [debtor]'s counter-

assertion of its claims against the RTC."); *see also diStefano*, 839 F.Supp. at 119 ("[T]he actions of the FDIC constitute a de facto denial of any claims asserted against it by defendant.").

1. The holding of *Midwest Federal Savings* was confined to situations in which the party raising the affirmative defense "had no independent basis for filing a claim against the RTC." 4 F.3d at 1497. Here, PNA did have an independent basis for its preference action, as is borne out by the fact that PNA filed the preference action first.

In concluding that PNA's preference action *eventually* became "incidental" to the RTC's

therefore concur in the result reached by the majority.

claims against PNA, the majority looks beyond this fact. While I agree that that is the right approach here, I think we need not decide (as the majority appears to) whether or not PNA would have been subject to FIRREA's exhaustion requirement if it had *continued* to assert the preference action in the service of an affirmative recovery. To decide whether or not *all* preference actions are exempt from FIRREA should not be our mission.