In the Matter of Lamar CHAPMAN III, Debtor.

Lamar Chapman III, Plaintiff,

v.

Charles Schwab & Company, et al., Defendants, and Cross–Defendants.

Lamar Chapman III, Plaintiff,

v.

Beverly C. Smith, Defendant, and Counter–Plaintiff and Cross–Plaintiff.

Lamar Chapman III, Plaintiff,

v.

Robert E. Smith, Defendant, and Counter–Plaintiff and Cross–Plaintiff.

Bankruptcy No. 00 B 05538. Adversary Nos. 00 A 00886, 00 A 00358, 00 A 00884.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 30, 2001.

Lamar Chapman III, Matteson, IL, pro se.

Michael A. Kraft, Kane & Fisher, Ross Weisman, Weisman & Weisman, for Defendants.

### MEMORANDUM OPINION ON CHAPMAN'S MOTION TO "RECONSIDER" THE SUMMARY JUDGMENT ENTERED AGAINST HIM

JACK B. SCHMETTERER,
Bankruptcy Judge.

This Adversary litigation was filed as related to the Chapter 13 Bankruptcy case

of Debtor Lamar Chapman III ("Plaintiff or Debtor or Chapman"). Plaintiff *pro se* has moved "for reconsideration" of the summary judgment entered August 17, 2001, in favor of Adversary Defendant Charles Schwab & Company ("Schwab") on its Motion. Chapman filed his Motion on August 27, 2001, within 10 days of that judgment being docketed, and therefore it must be considered under Rule 9023 Fed. R.Bankr.P. [Rule 59 Fed.R.Civ.P.].

The long and tortuous path of this litigation and undisputed facts established by Schwab's Motion was described in the earlier Memorandum Opinion issued herein on August 15, 2001 (and amended September 6, 2001), and will not be recounted here except to the extent necessary to analysis of the present Motion. *See Matter of Lamar Chapman III*, 265 B.R. 796 (Bankr.N.D.Ill.2001). As shown in that Opinion although he appears *pro se*, Mr. Chapman is an experienced litigant.

Chapman's goal here was to recover funds assertedly held by Schwab. Immediately after filing his bankruptcy he filed a Motion under § 547 to recover an alleged preferential transfer by Schwab. When he was advised from the bench that he had to present the issue by Adversary Complaint, he then filed this Adversary proceeding. The Complaint charged under many theories that Schwab took his funds and thereby was guilty of specified violations of state or federal law. The remedy sought by Chapman was turnover of the Account and funds therein held by Schwab, plus asserted related damages. Thus, this Adversary was a form of turnover action under 11 U.S.C. § 542 because it invoked the Bankruptcy Code as the primary source for the remedy sought, return of the Account that assertedly belonged to Chapman.

Chapman's Complaint against Schwab in 14 Counts was styled an action for turnover of property of Debtor's estate, for sanctions, and for compensatory and punitive damages. Chapman's Complaint stemmed from Schwab's refusal to allow him access to $47,276.44 ("the funds") deposited in his personal brokerage account ("the Account") at Schwab. Chapman asserted ownership of and sought turnover of the Account funds under various provisions of the Bankruptcy Code, Illinois law, and non-bankruptcy federal law. He alleged core jurisdiction in this Court as to all counts. Complaint, ¶ 2.

Chapman's Adversary Complaint asserted the following causes: Count I-that Schwab violated 11 U.S.C. § 547(b) by improperly transferring a total of $47,276.44 of his property from his Schwab One Account; Count II–Schwab has violated the automatic stay provisions of 11 U.S.C. 362(a); Count III–Schwab was guilty of "racial profiling" by deliberately targeting him as a black person for discriminatory treatment of his Account; Count IV and VI–Schwab violated 15 U.S.C. § 1692e by deceptively attempting to collect an alleged debt for a third-party and by making an improper debit for $47,276.44 from his Schwab One Account; Count V-fraud in the inducement by attempting to deprive Chapman of $47,276.44 of his funds; Count VII–Schwab violated the Uniform Deceptive Trade Practices Act; Count VIII–Schwab breached its fiduciary duty to Chapman; Count IX-breach of contract; Count X-"tortuous" interference with trade or commerce; Count XI-malicious interference with trade or commerce; Count XII-violation of the Uniform Commercial Code 15 U.S.C. Sections 3–104, *et seq.* (sic); Count XIII-restitution; and Count XIV-violation of unfair and deceptive trade practices laws throughout the country.

The underlying accusation throughout Chapman's complaint is that Schwab con-

verted or blocked funds belonging to him that he deposited in his Schwab One Account, and under various theories is liable for turnover of those funds as property of the bankruptcy estate for use in Chapman's Chapter 13 Plan. Schwab's position was that funds in Chapman's Account belonged to others and therefore Chapman had no cognizable legal interest in those funds.

Schwab filed a proof of claim for $77,810 plus interest and expenses which assertedly arose from an obligation to indemnify its depository for two checks allegedly endorsed by Chapman without authorization and deposited by him into the Account although they assertedly did not belong to him. Chapman filed an objection to Schwab's proof of claim re-alleging his ownership of funds in the Account and restating many allegations in his Complaint.

The earlier Opinion herein found that core jurisdiction lay here to decide the case under 28 U.S.C 157(b)(2)(A)[1] as to stay issues; (2)(B)[2] as to claims allowance and objections; (2)(F) as to Chapman's preference action; and (2)(E) as to all of Chapman's requests for turnover of estate property pleaded under various theories. Based on undisputed facts, that Opinion held Defendant Schwab was entitled to judgment on all counts because Chapman failed to produce evidence to show that he owned the funds (and indeed filed nothing in response to Schwab's Motion for Summary Judgment), while Schwab had shown by evidence that Chapman did not own the funds in issue.

Chapman now argues that jurisdiction to enter a final judgment was lost once the earlier Opinion determined that the funds were not his property. For reasons discussed below, Chapman's argument that jurisdiction held when this Adversary case was filed disappeared once Schwab showed that Chapman did not own the disputed property is clearly wrong, and his Motion for "reconsideration" is by separate order denied.

### JURISDICTION

Jurisdiction to complete the present case was retained even though Chapman voluntarily dismissed his Chapter 13 case. The basis for retention of jurisdiction were detailed in the earlier Memorandum Opinion.

It is well settled that if an underlying matter was a core proceeding, then proceedings flowing from that litigation are also within core jurisdiction, and that bankruptcy courts have core authority to interpret and enforce their orders. *In re Williams*, 256 B.R. 885, 892 (8th Cir. BAP 2001). Therefore, core jurisdiction certainly lies here to consider Mr. Chapman's Motion.

### DISCUSSION

#### Standards Under Rule 59(e) Fed.R.Civ.P.

Motions for "reconsideration" of a judgment should be treated as motions to alter or amend judgment under Rule 59(e) F.R.C.P., made applicable to bankruptcy by Rule 9023 Fed.R.Bankr.P. Under those rules, a party seeking to alter or vacate a judgment has 10 days from entry of the judgment to file a motion for such relief. Such motions will only be granted if there has been a mistake of law or fact or there is newly discovered evidence not

---

1. Core jurisdiction as to stay issues also arose under § 157(b)(2)(G).

2. Core jurisdiction as to claims issues in context of this litigation also arose under § 157(b)(2)(C).

previously available. *Gendron v. U.S.*, 154 F.3d 672, 674 (7th Cir.1998).

### Jurisdiction over the Adversary and Claim Issues

Bankruptcy courts, like other federal courts, have limited statutorily defined jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Title 28 U.S.C. § 1334(b) and § 157 define the limits of bankruptcy court jurisdiction. *Id.* Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 U.S.C., or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). A case "arises under" Title 11 if the cause of action invokes a provision of Title 11, such as a preference action under 11 U.S.C. § 547. 1 *Collier on Bankruptcy* ¶ 3.01[4][c][i] (Matthew Bender 15th ed. rev.2001). A case "arises in" a case under Title 11 if the cause of action, though not explicitly mentioned in the Code, would not exist outside of the bankruptcy, such as cases involving the administration of a bankruptcy. *Collier, supra,* ¶ 3.01[4][c][iv]. Finally, a "related" claim is a case that is based on non-bankruptcy law, typically state law, but the adjudication of that case will impact the estate of the debtor. *Collier, supra,* ¶ 3.01[4][c][ii].

The district court may refer "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a), and such has been done in this District. District Court Internal Operating Procedure 15(a).

In response to the Supreme Court's *Marathon* decision, *Northern Pipeline v. Marathon*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress did not vest bankruptcy judges with power to adjudicate all bankruptcy cases.

*Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987) Jurisdiction of bankruptcy judges was bifurcated into core and related jurisdiction. *Id.* at 91. Cases arising under Title 11 or in a case under Title 11 are "core" proceedings, and cases related to a case under Title 11 are "noncore" proceedings. *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990) (citations omitted). "Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *Matter of United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). For example, a preference action is a core proceeding under § 157(b)(2) because it seeks to assert a right arising under the Code. *Id.; In re Parker North American Corp. v. Resolution Trust Corp.*, 24 F.3d 1145, 1149 (9th Cir.1994). In contrast, state law claims that merely impact the distribution to creditors are "related" noncore proceedings. *United States Brass Corp.*, 110 F.3d at 1269; *Matter of Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1991); *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987).

Only core proceedings can be adjudicated in bankruptcy court without consent of the parties. While the district court may refer core and noncore ("related jurisdiction") cases to the bankruptcy court, the bankruptcy court can only enter judgement in core cases unless the parties consent to their noncore case being adjudicated by the bankruptcy court. If the parties do not consent as to related jurisdiction matters, the bankruptcy judge can only enter recommended Findings of Fact and Conclusions of Law and recommend a judgment, all to be forwarded to the district court for de novo review. *Phar-Mor,*

*Inc., v. Coopers & Lybrand,* 22 F.3d 1228, 1235 (3rd Cir.1994).

Most core proceedings fall in the nonexclusive list of proceedings listed in 28 U.S.C. § 157(b)(2). *Barnett,* 909 F.2d at 979, which include the following in pertinent part:

(A) matters concerning the administration of the estate;

IV allowance or disallowance of claims against the estate . . .;

(C) counterclaims by the estate against persons filing claims against the estate;

. . .

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

28 U.S.C. § 157(b)(2).

▆▆▆▆ Core proceedings under § 157(b)(2) clearly include actions for turnover of property which must be brought by an adversary complaint. *In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990). Asserted violation of the automatic stay is also recognized as a core proceeding. 28 U.S.C. § 157(b)(2)(A); *Price v. Rochford,* 947 F.2d at 832; *Collier, supra,* ¶ 3.02[3][b] (there has never been any doubt that administrative matters such as stay proceedings are core proceedings).

▆▆▆▆ Bankruptcy judges certainly have core jurisdiction to resolve disputes over ownership of property asserted to be property of the debtor. *In re Muller,* 72 B.R. 280, 284 (C.D.Ill.1987); *See also Williams,* 256 B.R. at 891 (turnover action is core proceeding); *In re Silva,* 185 F.3d 992, 994 (9th Cir.1999) (turnover action involving dispute over funds in bank account is core proceeding); *In re Mansker,* 60 B.R. 803,

805 (Bankr.D.Mass.1986) (turnover action involving breach of post-petition contract is core proceeding); *Parker North American,* 24 F.3d at 1149 (actions to recover preferential transfers are core proceedings). *See also Matter of Baudoin,* 981 F.2d 736, 741 (5th Cir.1993) (objection to proof of claim is core proceeding).

▆▆▆▆ Bankruptcy judges may under 28 U.S.C. § 157(b)(3) decide whether a case presents a core or noncore proceeding. They have "comprehensive jurisdiction" to deal "with all matters" concerning the bankruptcy estate. *Celotex,* 514 U.S. at 308, 115 S.Ct. 1493. This includes cases involving disputes over property of the estate. "[R]esolving competing claims to property that belonged to the debtor when it filed a petition in bankruptcy is one of the central functions of bankruptcy law." *Xonics,* 813 F.2d at 131. "The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets." *Id.*

### Relation of Adversary Counts to Schwab's Claims and Objections Thereto

Chapman's objection to Schwab's proof of claim which was consolidated for consideration with the Adversary Complaint (because the factual issues were closely related) invoked jurisdiction under 28 U.S.C. § 157(b)(2)(B) because it involved allowance or disallowance of a claim. His objection to Schwab's claim was tantamount to a counter-claim being made by him where the central issue was whether or not Debtor owned the Account.

▆▆▆▆ Section 502(d) of the Code requires bankruptcy courts to disallow claims to the extent that the creditor violates provisions of the Code regarding preferences and turnover actions. 11 U.S.C. § 502(d). Thus, to decide the Schwab claim, it was essential to adminis-

tration of Chapman's bankruptcy case to decide the merits of Chapman's turnover complaint. Resolution of the question whether Chapman owned the funds in issue was therefore integral to adjudication of Schwab's claim against Chapman. The fact that Chapman mooted his objection and the claim when he voluntarily dismissed his bankruptcy case on the eve of trial as to remaining issues in the Adversary does not affect this analysis. *See Chapman*, 265 B.R. at 804.

### Jurisdiction is not Defeated by Outcome of Litigation

Chapman's argument now rests on the assumption that because jurisdiction can be challenged at any time, once jurisdiction is established it can nonetheless disappear during the course of litigation when property in issue is found not to be his.

▮▮▮▮ Chapman contends that the Opinion of August 15 ruling that he did not own the property in dispute deprived the court of its jurisdiction to enter a final and applicable judgment implementing that ruling. He relies for support of his position on *Matter of FedPak Systems, Inc.*, 80 F.3d 207 (7th Cir.1996). However, *FedPak* is both factually and legally distinguishable. The debtor there moved the judge to clarify an earlier ruling regarding ownership of certain intellectual property which the debtor had sold. The motion sought the clarification purportedly to protect rights to payments from the purchaser of the intellectual property rights. The bankruptcy judge then issued orders clarifying the prior decision in a way unfavorable to the defendant in the debtor's prior litigation, and the defendant appealed. The district judge held that the debtor lacked standing to bring the action in bankruptcy court because that debtor had sold its interests in the subject property. A Seventh Circuit panel affirmed, holding that the debtor did not have standing to bring the case. The opinion also held that the bankruptcy court lacked subject matter jurisdiction over the case because the property at issue there was incontestably no longer property of the estate at the time the motion in question was presented. *FedPak*, 80 F.3d at 214–15.

*FedPak* reiterated a principle first enunciated in *Xonics*, 813 F.2d at 131, namely that bankruptcy court jurisdiction over property ends when the property at issue is no longer property of the estate. Thus, jurisdiction over property involved in that case ended after the property was no longer a part of the estate.

However, in the present case Chapman had not transferred ownership in the disputed Account before bringing his Adversary Complaint. Indeed, he claimed the property to be his on his bankruptcy schedules and sued to enforce his purported rights. Therefore, facts of the present case are distinguishable from *FedPak* where the property was sold before the issue was raised. *FedPak* is also distinguishable on legal grounds, since *FedPak* dealt with the boundaries of related jurisdiction. Here, jurisdiction of this Court was core, not related jurisdiction, because Chapman claimed the Account to be his and a dispute was presented in this Adversary over ownership of asserted property of the Debtor.

It is true that jurisdictional questions can be raised at anytime, but this does not mean that a court's jurisdiction to hear a case is fluid. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at 202, 204 (2d ed.1990) (although jurisdiction can be challenged at anytime, parties cannot create or destroy jurisdiction by consent). Once a federal court has jurisdiction to hear a case, that jurisdiction cannot be lost or defeated during the litigation. "We have consistently

held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport–McMoRan, Inc., et al. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (citing list of cases since 1824 upholding this principle); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 69, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). A common example of this principle applies to diversity jurisdiction cases. *Freeport–McMoRan,* 498 U.S. at 428, 111 S.Ct. 858 (once established, diversity jurisdiction cannot be defeated by the addition of a non-diverse party). This case illustrates the wisdom of that policy. Chapman is now challenging jurisdiction, in the forum he chose, to avoid the August 17th judgment. His present challenge is based on the very ruling against him that his claim of ownership which he placed in issue had no merit.

Mr. Chapman has essentially argued that this Court had core jurisdiction to adjudicate his case up to the moment when the adjudication went against him, thereby denying Defendant of any judgment so that Chapman can be free to relitigate all issues in another court. The law does not permit him to achieve victory because he lost on the merits.

### CONCLUSION

For the foregoing reasons, Chapman has failed to show any mistake of law or fact that warrants alteration or amendment of the judgment entered August 17, 2001. Chapman's Motion for "reconsideration" is by separate order entirely denied.